**GRAUE MILL DEVELOPMENT CORPORATION, Plaintiff–Appellant,**

v.

**COLONIAL BANK & TRUST COMPANY OF CHICAGO, Defendant–Appellee.**

No. 90–1248.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1991.

Decided March 20, 1991.

Grund, Robert M. Knabe, Grund, Marcus & McNish, Chicago, Ill., for plaintiff-appellant.

Nathan H. Lichtenstein, Elizabeth Sullivan, Halbert O. Crews, Greenberg, Keele, Lunn & Aronberg, Chicago, Ill., for defendant-appellee.

Before FLAUM, RIPPLE and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Graue Mill Development Corporation (Graue Mill) filed suit against its lender, Colonial Bank & Trust (Colonial) in district court, alleging that Colonial violated the anti-tying provision of the Bank Holding Company Act as well as the RICO statutes in its dealings with Graue Mill concerning a troubled condominium development project. The district court dismissed Graue Mill's action for failure to state a claim under the relevant statutes. We affirm.

■ Because this is an appeal of the dismissal of a complaint under Rule 12(b)(6), we take all allegations made by Graue Mill to be true and relate them accordingly. *Yeksigian v. Nappi,* 900 F.2d 101, 102 (7th Cir.1990). In the early 1980s, Graue Mill began development of a multi-building condominium project in a southwest Chicago suburb. To finance the construction of three specific buildings (Buildings 14, 15, and H), Graue Mill obtained in 1984 a three million dollar revolving line of credit from Colonial. Colonial conditioned the extension of the credit line on Graue Mill's use of a Colonial employee, Joseph Nasca, as construction manager for a certain building in the condominium project. Graue Mill asserts that Nasca knew little about the construction business, and proceeded to run Graue Mill's project into the ground, causing the company to incur substantial unnecessary expenses.

In late 1985, Colonial increased Graue Mill's credit line by one million dollars, and in June 1986, authorized yet another one million dollar addition to the credit line. Apparently this wasn't enough, for in December 1986, Graue Mill asked Colonial to refinance the existing five million dollar

Thomas J. Magill, Daniel T. Schibley, Burke, Wilson & McIlvaine, David I.

loan and approve an additional one million dollar credit, for a total loan amount of six million dollars. Colonial agreed, and the parties executed a second loan agreement. The second loan agreement, like the first one, required the company to employ Nasca as construction manager for a particular building in the project. The refinancing agreement also contained an additional interest provision which required Graue Mill to pay Colonial, as additional interest on the loan, an amount equal to 50% of the net income Graue Mill received from the sale of the townhouse units in Building H of the development. The agreement was secured by a first mortgage on the relevant buildings, security interests in Graue Mill's equipment and inventory, the personal guarantee of Graue Mill's president at the time, Regis Kopac, and a six million dollar insurance policy on Kopac's life.

Graue Mill contends that in the months following the signing of the second loan agreement, Colonial refused to disburse all of the remaining one million dollars in available credit, despite its repeated assurances to Graue Mill that it would do so. The reasons behind Colonial's hesitance are unclear. To complicate matters, Kopac died in a car accident in February 1987. After Colonial collected on Kopac's life insurance policy, Graue Mill offered to pay off the remaining balance on the six million dollar credit line in exchange for cancellation of the note and the accompanying mortgages. Colonial refused this request and instead declared the loan in default on August 3, 1987; the grounds for default are not clear from the pleadings. The bank asserted that it would not cancel the note or release its mortgages until the additional interest (from the sale of the condominium units) owed Colonial was satisfactorily calculated and paid. Graue Mill and Colonial, however, were unable to agree on a method of calculating this additional interest, and Colonial continued to hold Graue Mill's mortgages, assignments, and security interests, thereby preventing Graue Mill from seeking financing elsewhere.

In March 1988, Graue Mill filed this action in district court, seeking an injunction that would compel Colonial to release all mortgages and collateral interests held by the bank in the development. Graue Mill also claimed that by conditioning the availability of financing on Graue Mill's use of Nasca's services, Colonial violated the anti-tying provision of the Bank Holding Company Act (BHCA), 12 U.S.C. § 1972. The company further charged that Colonial engaged in a pattern of mail fraud in violation of the RICO statutes, 18 U.S.C. § 1961 *et seq.*, by falsely representing to Graue Mill that it would disburse certain loaned funds upon the execution of the second loan agreement. Graue Mill alleged that the bank never intended to disburse the last million dollars in financing and merely induced Graue Mill to sign the second loan agreement in order to force Graue Mill to avail itself of Nasca's services and to gain an equity stake in Building H. Graue Mill also appended several state law claims alleging breach of contract and breach of fiduciary duties.

Soon thereafter, the parties reached an agreement on the appropriate scope of interim relief. Colonial agreed to release some of its interests in Graue Mill's properties so that the company would be able to obtain substitute financing. The bank then filed a motion to dismiss Graue Mill's BHCA and RICO complaint for failure to state claims under those statutes. On the recommendation of Magistrate Lefkow, who engaged in a thorough analysis of the relevant law, the district court granted Colonial's motion. It held that Graue Mill failed to allege that the bank's construction management service tie-in was anticompetitive in nature as required under this circuit's interpretation of § 1972. The court also held that Graue Mill's RICO claims should be dismissed because the company failed to allege with sufficient specificity the predicate schemes to defraud Graue Mill that Colonial allegedly perpetrated. Having dismissed the federal claims, the district court dismissed Graue Mill's pendent state claims as well.

Graue Mill appeals, and we now affirm.

## I. BANK HOLDING COMPANY ACT ANTI–TYING CLAIM

■ Graue Mill alleges in its complaint that Colonial violated the anti-tying provi-

sion of the BHCA, 12 U.S.C. § 1972, by conditioning the extension of credit upon Graue Mill's use of Nasca's services as construction manager.[1] We agree with the district court that the company's allegations do not state a claim under § 1972.

12 U.S.C. § 1972(1)(A), the only subsection of the anti-tying provision that is of possible relevance to Graue Mill's claim, states that a bank is prohibited from conditioning the extension of credit on the requirement "that the customer shall obtain some additional credit, property or service from such bank other than a loan, discount, deposit, or trust service." Critical to our analysis is the word *obtain*. To obtain in the context of § 1972 means to purchase; that is, a bank may not condition the extension of credit on the *purchase* of the tied product. This reading is consonant with the purpose of the statute: § 1972 is directed at tying arrangements that have an anti-competitive effect on the market in the tied product, *see Davis v. First National Bank of Westville*, 868 F.2d 206, 208 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 68, 107 L.Ed.2d 35 (1989), and it is only by causing a customer to *purchase* a tied product—presumably at an above-market price—that a bank could exert such an effect.

Graue Mill has not alleged in its complaint, however, that it was compelled to purchase Nasca's services as a result of the tying arrangement. The company points to loan documentation which states that it was to pay Colonial "[f]ifty [p]ercent of any savings incurred on actual hard costs for Building 6" as compensation for Nasca's services, but has not claimed that it actually made any such payments to the bank. This is no surprise; Graue Mill explained in its complaint that it incurred significant cost overruns during construction—no doubt savings failed to materialize and so payment to Colonial was not required. Standing alone, the mere existence of the savings kickback clause—which at

the time of the loan's signing offered no more than the possibility of financial gain to Colonial should certain buildings come in under budget—is too weak a reed on which to predicate a § 1972 claim.

■ Graue Mill has also alleged that it was required to pay Colonial 8% of the hard cost of construction of certain buildings in the development as compensation for Nasca's services. As the district court noted, however, the loan documentation appended to and referenced by the company's complaint clearly indicates that the 8% fee was a standard loan service fee that attached not only to the buildings on which Nasca worked, but to all the buildings that Colonial financed. "[W]here the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the averments differing therefrom." *Foshee v. Daoust Construction Co.*, 185 F.2d 23, 25 (7th Cir.1950); *see also Bell v. Lane*, 657 F.Supp. 815, 817 (N.D.Ill.1987) (where exhibits attached to complaint negate its allegations, a court is not required to credit unsupported allegations). Like the district court, we do not credit Graue Mill's allegation that the 8% service fee was compensation for Nasca's services in considering the sufficiency of its complaint because of the evidence to the contrary in the relevant loan documentation.

■ We are mindful that plaintiffs need not quantify or articulate with great specificity the anticompetitive effect of tying arrangements said to violate § 1972. *See Davis*, 868 F.2d at 208 ("section 1972 renders tying arrangements involving a bank unlawful 'without any showing of specific adverse effects on competition'") (quoting S.Rep. No. 90–1084, 91st Congress, 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 5519, 5558 (supplementary views of Senator Brooke)). Nevertheless, we do require plaintiffs to allege that they

---

**1.** On appeal, Graue Mill contends that a number of other terms in its loan agreement with Colonial (*e.g.*, the equity participation provision) also violate § 1972. In its complaint, however, the company challenged only the lawfulness of

the provision requiring Graue Mill to use Nasca's services, and thus we consider only that argument in our review of the district court's decision to dismiss Graue Mill's complaint.

have sustained some semblance of economic injury as a result of the tying arrangement, or conversely, that economic advantage has accrued to the bank. Graue Mill has done neither: it has not claimed that it was actually compelled to purchase the tied services, nor has it alleged that Colonial has tangibly benefitted from the tie-in beyond its attempt to protect its investment. Tying arrangements that "have no anticompetitive effect but are aimed at protecting the bank's investment" do not violate § 1972. *Id.; see also Tose v. First Pennsylvania Bank*, 648 F.2d 879, 897 (3d Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981); *B.C. Recreational Indus. v. First Nat'l Bank*, 639 F.2d 828, 832 (1st Cir.1981); *McCoy v. Franklin Savings Assoc.*, 636 F.2d 172, 175 (7th Cir.1980). Graue Mill has, in short, alleged no more than that the bank conditioned the extension of credit on Graue Mill's *use* of Nasca's services, which were essentially provided *gratis.* Under these circumstances, Graue Mill's complaint does not come within the ambit of § 1972.

■ In the alternative, Graue Mill requests that we remand this case to the district court with directions to allow it to amend its complaint. While Graue Mill is correct in noting both that it has a right under Rule 15(a) to amend its complaint once before a responsive pleading is filed, and that a responsive pleading has not yet been filed in this action, it has also correctly recognized that the complete dismissal of an action extinguishes the right to amend. *See Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1111–1112 (7th Cir.), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). The district court here did just that—it dismissed Graue Mill's action with prejudice. Graue Mill nevertheless requests that we direct the district court to allow amendment of the complaint in the interest of fairness. We decline to do so. More than a year transpired between Colonial's filing of its motion to dismiss and the district court's final dismissal of Graue Mill's action. During that time, Graue Mill had sufficient opportunity to exercise its right to amend its complaint. Indeed, Graue Mill was on no-

tice that its § 1972 claims were being challenged as insufficient, yet took no action to correct its pleadings. Neither did it move to reopen the judgment of the district court under Rule 59(e) or 60(b) as it should have if it desired to amend its complaint after judgment had been entered. *See Car Carriers*, 745 F.2d at 1111. At this point, then, Graue Mill's request for remand in order to amend its complaint is untimely.

## II. RICO CLAIMS

■ Graue Mill's second argument on appeal is that the district court erred in dismissing the RICO counts in its complaint for failure to allege predicate acts of fraud with sufficient specificity. The starting point for pleading fraud claims under RICO is Rule 9(b) of the Federal Rules of Civil Procedure. That rule states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with *particularity.*" (emphasis added). Rule 9(b) effectively carves out an exception to the otherwise generally liberal pleading requirements under the Federal Rules. We read 9(b) to mean that RICO plaintiffs, like all other parties pleading fraud in federal court, must " 'state the time, place and content' " of the alleged communications perpetrating the fraud. *U.S. Textiles Inc. v. Anheuser Busch Cos.*, 911 F.2d 1261, 1268 n. 6 (7th Cir.1990) (quoting *New England Data Servs. Inc. v. Becher*, 829 F.2d 286, 291 (1st Cir.1987)); *see also Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir.1989). Most importantly, complaints charging fraud must sufficiently allege the defendant's fraudulent intent. *See Haroco v. American Nat'l Bank & Trust Co.*, 747 F.2d 384, 403 (7th Cir.1984), *aff'd on other grounds*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). "Cryptic statements" suggesting fraud are not enough; " '[m]ere allegations of fraud ..., averments to conditions of mind, or references to plans and schemes are too conclusional to satisfy the particularity requirements.' " *Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir.1989) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir.1985)). Rather, pleadings must

state the "specific content of the false representations as well as the identities of the parties to the misrepresentation." *Moore,* 885 F.2d at 540; *see also Skycom Corp. v. Telstar Corp.,* 813 F.2d 810, 818 (7th Cir. 1987) (complaint which "[did] not identify a single [fraudulent] statement ... or specify why that statement [was] fraudulent" failed to satisfy the requirements of Rule 9(b)).

 Here, the district court correctly found Graue Mill's complaint to be deficient. Graue Mill's complaint alleged that Colonial engaged in a scheme to defraud by making "false representations that Colonial would disburse loan amounts in a prompt and expeditious manner, that Colonial would honor its obligations under the various agreements it entered into with Graue Mill and that Colonial would act in a reasonable and business-like manner in performing under these agreements." This allegation—the only one in the complaint that adverts to fraud—fails to satisfy the requirements of Rule 9(b). Graue Mill has not alleged the *specific* content of any fraudulent statements or acts in its complaint. Moreover, its complaint is devoid of any mention of the time and place of the relevant misrepresentations or the individuals party to them. Absent such particularity, the district court properly dismissed Graue Mill's RICO counts as insufficient.

AFFIRMED.