51 F.3d 275
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Richard C. HUNTER, Plaintiff-Appellant,
v.
J. CRAIG CONSTRUCTION COMPANY, INC., Joseph T. Craig, Sr.,
and Bernard Parrish, Defendants-Appellees.
 No. 94-2193.
 United States Court of Appeals, Seventh Circuit.
 Submitted Jan. 13, 1995.
Decided March 30, 1995.
 
 1
 Before COFFEY and KANNE, Circuit Judges, and MORAN, District Judge*.
 
 ORDER
 
 2
 We review in this case whether Richard Hunter has stated a cause of action upon which relief can be granted under the federal civil RICO statute. The district court ruled that Hunter had failed to state a claim and dismissed his fourth amended complaint. We review a FED.R.CIV.P. 12(b)(6) dismissal de novo. Wade v. Hopper, 993 F.2d 1246, 1250 (7th Cir.1993).
 
 
 3
 In order to state a claim under civil RICO, a plaintiff must aver, inter alia, that the defendant engaged in a pattern of racketeering activity. 18 U.S.C. Sec. 1961(5), 1962. The plaintiff must allege that the defendant engaged in at least two related and continuous racketeering predicates enumerated in the statute. Id.; H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 29, 109 S.Ct. 2893 (1989). The purpose of these requirements is to weed out garden variety fraud allegations and to prevent RICO from being misused as a tool wherewith a disgruntled party may exact disproportionate vengeance against his partners or associates when their business dealings turn sour. See Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1022 (7th Cir.1992).
 
 
 4
 Here we will concern ourselves only with whether the alleged predicate acts would, if proven, satisfy the continuity prong of the H.J. Inc. test. First, we note that, because Hunter alleges that the defendants committed mail fraud as the predicate acts for civil RICO liability, the threshold inquiry is whether the plaintiff has pleaded fraud with sufficient particularity to satisfy FED.R.CIV.P. 9(b). Midwest Grinding, 976 F.2d at 1020. The plaintiff must, at a minimum, "state the time, place, and content of the alleged communications perpetrating the fraud." Id. at 1020 (quoting Graue Mill Dev. Corp. v. Colonial Bank & Trust Co., 927 F.2d 988, 992 (7th Cir.1991)).
 
 
 5
 The relevant accusations of misconduct arise in paragraph 11 and in subparagraphs (a) through (h) of paragraph 12 of Hunter's complaint. Paragraph 11 does not meet the requirements of 9(b) because it does not state when the alleged fraud occurred. As a result, we don't know whether Hunter is alleging that the defendants engaged in acts different from those alleged with greater particularity in paragraph 12 or whether he is merely restating them for purposes of alleging how he was injured.
 
 
 6
 Subparagraph (a) of paragraph 12 charges that Joseph T. Craig, Sr. and Bernard Parrish withdrew money from J. Craig Construction's bank accounts on August 26, 1986 and used it for personal expenses. Contrary to the district court's conclusion, this accusation alleges fraud in that the defendants used corporate money for personal uses without fulfilling their duty to disclose the diversion to their business partner.[1] Subparagraph (b) alleges that defendants Joseph T. Craig and Bernard Parrish withdrew money from J. Craig Construction's bank account on August 27, 1986 and deposited it via wire transfer into the account of The Strand Company, an entity in which Craig and Parrish owned an interest. Subparagraph (b) also alleges that Hunter did not know that Craig and Parrish were transferring the money and that, while Craig and Parrish have termed the transfer a loan, they have not repaid any of the money to J. Craig Construction. This claim sufficiently pleads fraud with particularity. Similar to subparagraph (a), subparagraph (c) alleges that Craig and Parrish deposited checks due J. Craig Construction into personal bank accounts without Hunter's prior knowledge or approval on August 28, 1986. So, subparagraph (c) also alleges fraud, as does subparagraph (d), which alleges five specific transfers of funds via the mail from J. Craig Construction to five vendors as payment for personal services they had rendered to Joseph Craig, Sr. These transfers allegedly occurred during August of 1986.
 
 
 7
 Subparagraph (e) alleges that the defendants converted hand tools and committed income tax evasion, crimes that are not RICO predicates.
 
 
 8
 Subparagraph (f) alleges that, during September 1986, Bernard Parrish, through the use of either the mail or wire or both, bought stock on the Vancouver stock exchange on behalf of and with authority given by J. Craig Construction. The paragraph also alleges that Parrish sold the stock in 1987 for a profit but that he pocketed the money himself. However, the paragraph does not allege that Parrish used either the mail or the wire to sell the stock or pocket the proceeds. We do not read the complaint to allege that any fraud occurred when Parrish purchased the stock, and we will not allow the plaintiff to bootstrap Parrish's alleged later fraud into his earlier use of the mail. Therefore, subparagraph (f) also fails to plead mail fraud.
 
 
 9
 Subparagraph (g) alleges that the defendants locked Hunter out of his office because he did not agree with their plans for the corporation's funds. Such a lock-out is not a RICO predicate crime. Subparagraph (h) alleges that the defendants diverted money from J. Craig Construction until October 11, 1990, when Joseph Craig Sr. filed fraudulent bankruptcy petitions on behalf of J. Craig Construction. However, Hunter does not allege any specific dates or times of the alleged diversions or any use of the mails in connection with the diversions or the bankruptcy petitions. Hunter thereby fails to allege mail fraud with particularity. Hunter again also alleged that Craig and Parrish committed the non-RICO predicate act of tax evasion.
 
 
 10
 A RICO plaintiff may establish continuity in one of two ways: (1) by demonstrating a closed-ended conspiracy that existed for such an extended period of time that a threat of future harm is implicit; (2) by demonstrating an open-ended conspiracy that, while short lived, shows clear signs of threatening to continue into the future. H.J. Inc., 492 U.S. at 241-242, 109 S.Ct. at 2902; Midwest Grinding, 976 F.2d at 1023. The Supreme Court in H.J. Inc. discussed continuity's character as follows:
 
 
 11
 A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated.
 
 
 12
 H.J. Inc., 492 U.S. at 242, 109 S.Ct. at 2902. Here, the alleged RICO violations occurred within one month of each other, most within the span of two days. This hardly amounts to a lengthy closed-ended conspiracy. See Id.
 
 
 13
 A threat of continuity may also arise where the "predicates are a regular way of conducting defendant's ongoing legitimate business," the defendants operate a "long-term association that exists for criminal purposes," or the predicate acts themselves include a specific threat of continuing into the future. Id. at 242-43. Hunter has not alleged that mail fraud is the usual method the defendants use to operate their business, nor has he alleged that the defendants operate a long-term criminal association that exists for criminal purposes.
 
 
 14
 Hunter does allege that Parrish told him on August 26, 1986 and again on August 26, 1987 that Parrish "had some things he wanted to do with J. Craig Construction, Inc. and its funds, and that he knew plaintiff would not agree with them." The timing of these alleged comments is important. The first is contemporaneous with the only particularized instances of alleged mail fraud, so while it might imply that the defendants were going to divert corporate funds for their use, it does not suggest they would do so on a continuous basis. And the alleged instances of mail fraud themselves do not suggest that they would continue indefinitely. That Parrish stated this warning to Hunter a second time might, again, suggest that the defendants were going to continue diverting corporate funds. However, Hunter does not allege with any particularity that the defendants committed any subsequent RICO predicate acts that would substantiate his fear of continued racketeering activity.
 
 
 15
 Other factors to consider in evaluating whether predicate acts are continuous for purposes of RICO include the number and variety of predicate acts, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries. Morgan v. Bank of Waukegan, 804 F.2d 970, 975 (7th Cir.1986). Here, we have eight homogeneous predicate acts, all of which involve the allegedly fraudulent conversion of corporate funds to personal use, and all of which occurred within one month. We can count two putative victims, Hunter as well as the corporation, and two related, though slightly different, injuries (damage to Hunter's credit rating and loss of funds to the corporation). But the supposed scheme (loosely put, corporate looting) is singular. We have noted that, while the presence of only a single scheme cannot preclude a finding of a RICO pattern, it is significant when combined with other relevant factors. United States Textiles, Inc. v. Anheuser-Busch Companies, 911 F.2d 1261, 1269 (7th Cir.1990). Here, where the only predicate acts pled with particularity occurred within one month and there were only two victims who sustained one injury each, the Morgan guidelines steer us toward the conclusion that Hunter has not properly alleged a case sounding in civil RICO. The defendants' alleged transgressions, even if true, do not represent the sort of continuous conduct that RICO redresses. They suggest at most ordinary, garden-variety fraud. The district court's dismissal of the plaintiff's complaint is AFFIRMED.
 
 
 
 *
 The Honorable James B. Moran, Chief Judge for the Northern District of Illinois, sitting by designation
 
 
 [1]
 We note that Hunter does not allege that the defendants used the mails to execute their scheme; however, we acknowledge without deciding that use of the mails may be implicit in the bank collection process and thus constitute part of Hunter's allegation. Because of our ultimate conclusion in this case, however, whether Hunter has alleged use of the mails is irrelevant