NORTHGATE MOTORS, INC., Gateway Chevrolet–Cadillac, Inc. and William Kopecko, Plaintiffs,

v.

GENERAL MOTORS CORPORATION, Defendant.

No. 99–C–0900.

United States District Court, E.D. Wisconsin.

Aug. 22, 2000.

Erie T. Raskopf, Oconomowoc, WI, Stanley Morganstern, Cleveland, OH, for Plaintiffs.

Roberta F. Howell, Madison, WI, for Defendant.

### DECISION AND ORDER

ADELMAN, District Judge.

Plaintiffs Northgate Motors, Inc. ("Northgate"), Gateway Chevrolet–Cadillac, Inc. ("Gateway") and William Kopecko sue defendant General Motors Corporation ("GM") alleging that GM treated them inequitably in the course of negotiating and executing dealership agreements. Plaintiffs allege that GM violated a federal statute and a state statute, as well as duties imposed by common law. This court has jurisdiction based both on the existence of a federal question and diversity of citizenship. GM moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) whereupon plaintiffs filed an amended complaint adding additional material to their allegations. The parties stipulated that defendant's original motion to dismiss would be deemed a response to the amended complaint. I now address the motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Northgate and Gateway are corporations and GM dealers in Rhinelander, Wisconsin. Plaintiff Kopecko is the sole shareholder and president of both dealerships. Kopecko also owns interests in dealerships that sell Toyota, Honda and Nissan vehicles in the Rhinelander area. In 1995 Kopecko, who then owned fifty percent of Gateway, asked GM for permission to buy the fifty percent that William Browne held. GM rejected the request based on Northgate's poor sales performance under Kopecko's ownership. GM also advised Kopecko that it intended to terminate the Gateway franchise because of poor performance. Subsequently, Northgate asked GM if it could relocate to

premises at 1911 North Stevens Street owned by Kopecko.

The parties entered into negotiations and reached an agreement. GM agreed to approve Kopecko's buy-out of Browne's interest in Gateway and Northgate's request to relocate to 1911 North Stevens Street. Plaintiffs agreed to realign the Northgate and Gateway franchises pursuant to GM's Year 2000 Plan[1] so that Northgate would become a Pontiac–Buick–GMC dealer and Gateway a Chevrolet–Oldsmobile–Cadillac dealer. Plaintiffs also agreed that Gateway and Northgate would operate out of separate facilities and that Gateway would construct a new facility at 1935 North Stevens Street and remove its Honda franchise from that location. On September 18, 1996, the parties executed Dealer Sales and Service Agreements incorporating these terms.

In May 1997, prior to having fully complied with the agreements, Gateway and Northgate asked GM for permission to relocate the Northgate franchise to the Gateway facility, or alternatively, to permit Gateway to sell Toyotas and Northgate to sell Hondas and Nissans. GM denied their requests. Pursuant to the Wisconsin Motor Vehicle Dealer Law ("WMVDL"), Wis. Stat. §§ 218.0101–0172,[2] Gateway and Northgate then asked the Wisconsin Division of Hearings and Appeals to grant them a hearing to determine whether GM had good cause for refusing the request. Wis. Stat. § 218.0134(2)(c) (formerly § 218.01(3x)(b)(3)). GM objected and argued that by entering into the agreements Gateway and Northgate had waived their right to a good cause hearing. The parties then litigated the matter before the administrative agency. GM moved for summary judgment, and an administrative law judge (ALJ) recommended certain factual find-ings and that GM be granted summary judgment. Subsequently, the agency issued a final ruling that adopted the ALJ's findings of fact and granted the motion for summary judgment.

Gateway and Northgate appealed the agency's decision to the Oneida County Circuit Court and also filed the present suit. The circuit court reversed the agency's ruling that the dealerships were not entitled to a good cause hearing and remanded the case for such a hearing but expressly left undisturbed the agency's findings of fact. GM appealed the circuit court's decision to the state court of appeals where the matter is pending.[3]

## II. MOTION TO DISMISS STANDARD

GM moves to dismiss arguing that Kopecko lacks standing to sue, that a substantial number of plaintiffs' claims are barred by issue or claim preclusion and that plaintiffs fail to state claims upon which relief may be granted. A complaint, or portion thereof, must be dismissed if it appears beyond doubt that the plaintiff cannot adduce facts that would entitle him to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In reviewing a complaint under this standard, the court accepts as true the plaintiff's allegations, *Hospital Bldg. Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), and construes the pleadings in the light most favorable to the plaintiff, resolving all doubts in the plaintiff's favor. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

---

1. Under GM's Year 2000 Plan, hub towns such as Rhinelander were to have two separate dealerships, one selling Chevrolet, Oldsmobile and Cadillac and the other selling Pontiacs, Buicks and GMC trucks.

2. The WMVDL was formerly codified at Wis. Stat. § 218.01. The statute was renumbered effective April 19, 2000.

3. The parties advised the court of GM's appeal in a telephone conference.

## III. DISCUSSION

Plaintiffs allege that GM: (1) violated the federal Automobile Dealers Day In Court Act ("ADDICA"); (2) violated the WMVDL; (3) breached its contractual duty of good faith and fair dealing; and (4) fraudulently induced plaintiffs to enter into a contract. The majority of plaintiffs' claims are based on plaintiffs' contention that GM coerced, intimidated or manipulated them into the agreements. I now turn to plaintiffs' specific claims.

### A. Kopecko's Claims

#### 1. ADDICA Claims

■ The ADDICA, 15 U.S.C. §§ 1221–25, gives automobile dealers a right of action to redress unfair actions in connection with a franchise agreement. An "automobile dealer" is defined as "any person, partnership, corporation, association, or other form of business enterprise ... operating under the terms of a franchise and engaged in the sale or distribution of passenger cars, trucks, or station wagons." 15 U.S.C. § 1221(c). In the present case the automobile dealers are Northgate and Gateway, both corporations. Where dealers are corporations the right of action provided by the ADDICA belongs to the corporation. *Vincel v. White Motor Corp.,* 521 F.2d 1113 (2d Cir.1975). Kopecko is a shareholder and officer of the corporate dealerships and thus would not appear to possess any rights under the ADDICA.

Kopecko makes several arguments to try to get around this problem. Relying on *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 550 F.Supp. 1199, 1203–04 (1982), he argues that I should decide the issue of his standing only on a fully developed evidentiary record. However, plaintiffs attached a copy of the franchise agreement to their complaint, and it is thus before me. *See* Fed.R.Civ.P. 10(c). Moreover, GM has moved to dismiss. I have no choice but to decide the motion applying, of course, the appropriate standard of review.

Kopecko also argues that he is a party to the franchise agreements. However, the agreements make clear that Kopecko signed them as a representative of the dealerships not as a dealer himself. The first line of each dealership agreement states that it "is entered into by" GM and either Gateway, Inc. or Northgate, Inc. (Am. Compl. Ex. 1 at 1.) The execution section states that the agreement is valid only if signed "on behalf of dealer by its duly authorized representative ... its Dealer Operator." (*Id.* at 5.) Kopecko signed as Dealer/Operator. Similarly, the Multiple Dealer Operator Addendum is signed by Kopecko on behalf of the corporate dealerships.

Kopecko points to the franchise agreements' third paragraph, each of which provides:

> This Dealer Agreement is a personal service agreement entered into in reliance of the qualifications of the Dealer Operator named below, William Kopecko, and on Dealer's assurance that Dealer Operator will provide personal service by exercising full managerial authority over Dealership Operations. Dealer Operator must also meet all other requirements set forth in Article 2 of the Standard Provisions.

(*Id.* at 2.) This paragraph, however, is a representation by the dealer that Kopecko is a qualified manager. It does not make Kopecko a dealer.

Kopecko also cites *Kavanaugh v. Ford Motor Co.,* 353 F.2d 710 (7th Cir.1965). In *Kavanaugh,* the dealer was a corporation in which Ford had an eighty percent interest and Kavanaugh, who managed the dealership, a twenty percent interest. When a dispute arose between Kavanaugh and Ford the court permitted Kavanaugh to assert the dealer's claims under the ADDICA reasoning that the dealer would not assert a claim because of Ford's majority stock interest. The court determined that unless Kavanaugh was permitted to sue, the purpose of the ADDICA would be subverted. By contrast, here no obstacle

prevents the dealers from asserting the ADDICA claims and they have, in fact, asserted such claims. Thus, the purpose of the ADDICA will not be frustrated by adhering to the general rule that ADDICA claims belong only to dealerships. *See also Conroy Datsun Ltd. v. Nissan Motor Corp. in U.S.A.,* 506 F.Supp. 1051 (1980) (distinguishing *Kavanaugh* because dealer fully able to assert claim); *Moorehead v. General Motors Corp.,* 442 F.Supp. 873, 879 (E.D.Pa.1977) (where corporate dealer not prevented from asserting its own claim under the ADDICA individual shareholder could not); *Rodrigue v. Chrysler Corp.,* 421 F.Supp. 903, 908 (E.D.La.1976) (same); *Olson Motor Co. v. General Motors Corp.,* 703 F.2d 284, 290 (8th Cir.1983) (same).

Kopecko points to *Rea v. Ford Motor Co.,* 497 F.2d 577 (3d Cir.1974), *Rea v. Ford Motor Co.,* 560 F.2d 554 (3d Cir.1977) and *York Chrysler–Plymouth, Inc. v. Chrysler Credit Corp.,* 447 F.2d 786 (5th Cir.1971), in support of his argument that he may bring an ADDICA claim in his own right. In the two *Rea* decisions, a shareholder and corporate officer was permitted to assert a claim for damages resulting from Ford's forcing him to sell an Oldsmobile dealership which he owned prior to establishing a Ford dealership. The Oldsmobile dealership had no relationship to Ford and could not seek damages from Ford. Thus, it is reasonable to read the *Rea* decisions as coming within the scope of the exception established in *Kavanaugh.* In *York* the court permitted two individuals who owned a dealership to assert ADDICA claims because the defendant had "visited upon the Yorks the personal responsibility for keeping the franchise viable" by requiring them to maintain beneficial ownership. *York,* 447 F.2d at 790–91. Although *York* purported to apply the reasoning of *Kavanaugh,* the decision has been criticized for ignoring the critical factual difference that in *Kavanaugh* "the individual was the only person or entity that could have sued Ford under the Dealer Act." *Rodrigue,* 421 F.Supp. at 907.

Nothing in *Kavanaugh* suggests that the Seventh Circuit would permit an individual who was not a dealer to assert a claim under the ADDICA in the absence of an allegation that the dealer could not or would not assert the claim. Moreover, Kopecko presumably created corporate entities to be GM dealers because he believed the corporate form offered him certain advantages such as limited liability. There is, therefore, no equitable reason why he should be able to assert an individual claim. Thus, Kopecko's ADDICA claims will be dismissed.

### 2. WMVDL Claims

■ Kopecko's claim under the WMVDL raises a similar issue. Like the ADDICA the purpose of the WMVDL is to provide protection to dealers against unfair treatment by manufacturers. *Forest Home Dodge v. Karns,* 29 Wis.2d 78, 85, 138 N.W.2d 214 (1965). The statute requires manufacturers, factory representatives, distributor representatives, dealers, salesmen and sales finance companies to obtain a license in order to do business. It permits licensees that suffer pecuniary loss to maintain damage actions against other licensees that violate the statute. However, a licensee making a claim under the statute cannot claim rights beyond the scope of his license. *Ford Motor Co. v. Lyons,* 137 Wis.2d 397, 435–37, 405 N.W.2d 354 (Ct.App.1987). In *Lyons* the plaintiff was licensed as a salesman but his claims were dismissed because they concerned Ford's conduct in relation to a dealership. Kopecko's WMVDL claims must similarly be dismissed because he is licensed as a salesman and his claims all relate to GM's alleged misconduct toward its dealers.

### 3. Common Law Claims

■ Kopecko also alleges that GM breached its contractual duty of good faith and fair dealing and that it fraudulently induced him to enter into agreements. However, as previously discussed, Kopecko did not contract with GM as an individual.

He is not a party to Northgate or Gateway's contracts with GM and, thus, may not make a claim under those contracts. *Schilling v. Employers Mut. Cas. Co.*, 212 Wis.2d 878, 886, 569 N.W.2d 776 (Ct.App. 1997). Nor were the contracts made for his benefit, thus, he is not a third-party beneficiary of them. *Goossen v. Estate of Standaert*, 189 Wis.2d 237, 249, 525 N.W.2d 314 (1994). Kopecko's breach of contract claim, therefore, will be dismissed. His claim that he was fraudulently induced into the agreements must be dismissed for the same reason. To plead a valid claim of fraud in the inducement, a plaintiff must have been induced to enter into a contract. *Budgetel Inns, Inc. v. Micros Systems, Inc.*, 8 F.Supp.2d 1137, 1147 (E.D.Wis.1998). Because Kopecko was not a party to the contract his fraud in the inducement claim fails.

## B. Issue Preclusion

■ GM moves to dismiss most of plaintiffs' ADDICA, WMVDL and breach of contractual duty of good faith claims based on issue preclusion. Plaintiffs preliminarily assert that issue preclusion may not be raised by a Fed.R.Civ.P. 12(b)(6) motion and that, because GM attached portions of the file of the administrative proceedings to its motion, the motion must be converted into one for summary judgment. In addressing a Rule 12(b)(6) motion, a court primarily considers the pleadings although matters of public record may also be taken into account. *See* 5A Charles Alan Wright and Arthur R. Miller, *Federal Practice & Procedure* § 1357 at 299 (2d ed.1990). Matters which are properly the subject of judicial notice may be considered without converting the motion into one for summary judgment. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir.1997). Administrative agency files and decisions are properly the subject of judicial notice. *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir.1996); *see also General Elec. Capital Corp.*, 128 F.3d at 1081 ("The most frequent use of judicial notice of ascertainable facts is in noticing

the contents of court records.") (quoting 21 Charles Alan Wright and Kenneth W. Graham, Jr., *Federal Practice & Procedure* § 5106 at 505 (1st ed. 1977 & Supp.1997)) (quotation marks omitted). Further, a preclusion defense may be raised by a motion to dismiss. *See* 5A Wright and Miller, *supra* § 1357 at 357 & n.69; *Economy Food & Liquor Co. v. Frankfort Distillers Corp.*, 232 F.2d 410, 412 (7th Cir. 1956). Here, GM submitted relevant portions of the record of the administrative proceeding all of which are matters of public record. These documents are properly before me as is the question of issue preclusion.

■ I apply Wisconsin law to determine the preclusive effect of the judgment of a Wisconsin court or agency. *Starzenski v. City of Elkhart*, 87 F.3d 872, 877 (7th Cir.1996). Wisconsin law on issue preclusion is derived primarily from the *Restatement (Second) of Judgments* §§ 27 and 28 (1982). *See, e.g., Michelle T. by Sumpter v. Crozier*, 173 Wis.2d 681, 685 n. 2, 687 n. 5, 689 n. 10, 495 N.W.2d 327 (1993); *Froebel v. Meyer*, 13 F.Supp.2d 843, 860 (E.D.Wis.1998), *aff'd* 217 F.3d 928 (7th Cir.2000). The general rule is that where an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. *Restatement* § 27. Wisconsin courts, however, will not apply issue preclusion if to do so would be fundamentally unfair. *Lindas v. Cady*, 183 Wis.2d 547, 559, 515 N.W.2d 458 (1994).

■ The principal issue raised by plaintiffs' ADDICA, WMVDL and bad faith claims is whether GM coerced plaintiffs into agreeing to GM's terms. Plaintiffs allege that GM violated the ADDICA, the WMVDL and the duty of good faith and fair dealing implied in the parties' dealership agreement by coercing Northgate into agreeing to realign its dealership and to

construct a separate facility in return for GM's approving the sale of 50% of the stock of Gateway to Kopecko. (Am. Compl.¶¶ 20(B)-(E), 24a(B) & (C), 29.) Plaintiffs further allege that GM violated the ADDICA, the WMVDL and its contractual duties by coercing Gateway into agreeing to realign its dealership and give up its Honda franchise in return for GM's approval of Kopecko as Gateway's sole shareholder and withdrawal of its intention to terminate the Gateway dealership for nonperformance. (*Id.* ¶¶ 20(A)-(E), 24a(A)-(C) & (E)-(H), 29).

The record of the administrative proceeding discloses that the issue of whether GM coerced plaintiffs into agreeing to its terms was fully litigated. Northgate and Gateway filed complaints, and the parties then engaged in discovery. GM moved for summary judgment, and the parties briefed the issue. The ALJ made recommendations of fact and proposed a ruling. The parties then filed briefs in opposition to and in support of the ALJ's recommendation, and the agency issued a final ruling.

In both the proposed ruling and final ruling, the agency squarely rejected plaintiffs' allegation of coercion on the part of GM. Rather, the agency found that the agreements between Northgate and Gateway and GM resulted from an offer made by Kopecko to GM to realign the franchises and operate two separate GM facilities in return for GM's approval of Gateway's request for Kopecko to be its dealer-operator, a request that GM had previously denied. (Def.'s Br. in Supp. of Mot. to Dismiss [hereinafter Def.'s Br.] Ex. B at Agency Final Ruling at 5, 7, 9, 10–11.) The agency found that Kopecko "used the rights granted ... by sec. 218.01(3x), Stats., as additional bargaining leverage in negotiating" the agreements. (*Id.* at 16.) The record is clear that the agency determined that the agreements were negotiated and bargained for, rather than coerced. ("Mr. Kopecko agreed in writing to take specific actions in exchange for Chevrolet's approval of the fifty percent stock ownership sale.") (*Id.* at 11.)

Plaintiffs contend that the circuit court's reversal means that the agency's finding that the agreements did not result from coercion is not sufficiently final to be issue preclusive. Section 13 of the *Restatement*, however, states that a "final judgment" includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect. Here, the circuit court reversed only the agency's conclusion that as part of the agreements plaintiffs waived their right to a hearing on whether GM's refusal of their request to modify the terms of the agreements was based on good cause. However, the court expressly stated that it was leaving undisturbed the agency's findings of fact. The agency's central finding of fact was that the agreements were not the result of coercion by GM. This finding is, therefore, "sufficiently firm" or final to be accorded issue preclusive effect. *See also Town of Fulton v. Pomeroy,* 111 Wis. 663, 669, 87 N.W. 831 (1901) (factual findings binding until set aside by appellate court, even if appellate court grants judgment on legal basis different than relied on by the trial court).

In order to be issue preclusive the agency's finding must also have been essential to its decision. The reason for this requirement is that the tribunal may have devoted less care to determining an issue that did not affect the result. *See* 18 Charles Alan Wright, et al., *Federal Practice & Procedure* § 4421 at 193 (1981). Here, the agency's finding that GM did not coerce plaintiffs into the agreements was essential to its decision. In the absence of this finding it would have been unnecessary for the agency to proceed to determine whether as part of the agreements plaintiffs waived the right to a good cause hearing.

Thus, the issue of coercion was actually litigated, determined by a final judgment and essential to the judgment. Moreover, it is not unfair to accord issue preclusive

effect to the agency's finding of no coercion. There is no reason why plaintiffs should be allowed to relitigate this issue. Thus, all of plaintiffs' claims under the ADDICA, the WMVDL and the contract which are premised upon their allegation of coercion will be dismissed. These include the claims in paragraphs 20(A)-(D), 24a(C), (E), (G) and (H).

Plaintiffs' claims in paragraph 24a(B) and (F) regarding GM's performance standards are also barred based on issue preclusion. These claims allege that GM violated § 218.01(2g) of the WMVDL (now § 218.0124) by applying an unfair performance standard in denying Kopecko's request to buy all of Gateway's stock and to become its dealer-operator based on his poor performance at Northgate. However, the only harm alleged to have resulted from the imposition of this standard is that plaintiffs were coerced into signing the agreements. Because the agency found that plaintiffs were not coerced, and this finding was (as discussed above) actually litigated, decided, and essential to the agency determination, these claims are also precluded.

### C.   Fraud Claim

Plaintiffs also allege that GM fraudulently "induc[ed] them to agree to a realignment of the GM franchises and to construct and establish two (2) separate facilities and removing the existing Honda franchise." (Am.Compl.¶ 32.) GM argues that this claim must be dismissed because it is barred by claim preclusion, economic loss doctrine, or both.

■■■ I find the second argument dispositive. Economic loss doctrine generally bars tort claims that seek damages only for economic losses arising out of a commercial transaction. *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis.2d 235, 247, 593 N.W.2d 445 (1999). Economic loss is damage which does not cause personal injuries or damage to other property. *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis.2d 395, 402, 573

N.W.2d 842 (1998). Earlier Seventh Circuit decisions had predicted that Wisconsin's economic loss doctrine would prohibit a plaintiff from recovering tort damages when an intentional misrepresentation fraudulently induces the plaintiff to enter a contract. *Cooper Power Systems, Inc. v. Union Carbide Chemicals, & Plastics Co.*, 123 F.3d 675, 682 (7th Cir.1997). The Wisconsin Court of Appeals reached a contrary view, but the state Supreme Court split evenly on whether to adopt *Cooper*'s prediction of state law or the lower state court's contrary position. *Douglas–Hanson Co., Inc. v. BF Goodrich Co.*, 229 Wis.2d 132, 598 N.W.2d 262 (1999), *aff'd by an equally divided court*, 233 Wis.2d 276, 607 N.W.2d 621 (2000). Finding that state law is unsettled, the Seventh Circuit recently concluded that *Douglas–Hanson* leaves undisturbed its previous prediction that Wisconsin's economic loss doctrine bars fraudulent inducement claims. *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 965 (7th Cir.2000). I am bound by the Seventh Circuit's assessment of the state of Wisconsin law where the law is unsettled. Here, plaintiffs' fraud in the inducement claim arose out of a commercial transaction and seeks only economic damages. Therefore, based on *Home Valu*, I have no choice but to dismiss it.

### D.   Remaining Claims

#### 1.   ADDICA Claims

Of plaintiffs' ADDICA claims only those in paragraphs 9a-d and 20(E) remain. In paragraphs 9a-d plaintiffs allege that GM violated the ADDICA by failing to deliver a sufficient number of GMC trucks, and in paragraph 20(E) by discriminating against plaintiffs by imposing obligations on them not required of other dealers. GM argues that neither of these allegations states a claim under the ADDICA.

■■■ The ADDICA requires manufacturers "to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminat-

ing, canceling or not renewing the franchise with said dealer." 15 U.S.C. § 1222. "Good faith" is defined as the duty of each party to a franchise agreement to act in a fair and equitable manner so as to guarantee each party freedom from coercion, intimidation, or threats of coercion or intimidation from the other. 15 U.S.C. § 1221(e). The ADDICA only protects dealers against unfair practices that are evidenced by acts of coercion or intimidation. *Ed Houser Enters., Inc. v. General Motors Corp.,* 595 F.2d 366, 369 (7th Cir.1978) (an indispensable element of an ADDICA claim is lack of good faith involving coercion, intimidation or threats thereof); *see also Lawrence Chrysler Plymouth, Inc. v. Chrysler Corp.,* 461 F.2d 608, 610 (7th Cir.1972) (the existence or nonexistence of good faith must be determined in a context of actual or threatened coercion or intimidation).

The claims in paragraphs 9a-d and 20(E) allege respectively that GM failed to deliver enough trucks and that GM's requirement that plaintiffs realign and operate out of separate facilities was discriminatory. Neither of these claims includes an allegation of coercion. Thus, neither of these claims alleges a violation of the ADDICA. Further, even if plaintiffs' allegations of coercion made in other claims are incorporated into these claims, these claims would be barred by issue preclusion as discussed above. Thus, the claims in paragraphs 9a-d and 20(E) will be dismissed for failure to state a claim under the ADDICA.

**2. WMVDL Claims**

Of plaintiffs' WMVDL claims only those contained in paragraphs 24a(A), (D) and part of (F) remain. In paragraph 24a(A) and the first clause in paragraph 24a(F), plaintiffs allege that GM violated § 218.01(2f) of the WMVDL (now § 218.0123) by unfairly allocating GMC trucks. In paragraph 24a(D) plaintiffs allege that GM violated § 218.01(3)(a)(15) of the WMVDL (now § 218.0116(1)(h)) by coercing plaintiffs "to order commodities or services the Plaintiffs did not order." GM argues that these claims should be dismissed on several grounds including that they fail to state claims for relief, that they are barred by claim preclusion and that most or all of the claim of failing to provide sufficient trucks is barred by the statute of limitations. I address the question of whether plaintiffs state claims for relief as I find it dispositive.

While pleadings must be construed in the light most favorable to the plaintiffs and all well-pleaded facts accepted as true, a plaintiff is required to plead sufficient facts from which it may be inferred that the plaintiff is entitled to relief. *Northern Trust Co. v. Peters,* 69 F.3d 123, 129 (7th Cir.1995). Allegations containing unsupported conclusions of fact or mixed fact and law are not accepted as true. *Tamari v. Bache & Co. (Lebanon) S.A.L.,* 565 F.2d 1194, 1198–99 (7th Cir.1977). Further, conclusory statements are insufficient to defeat a motion to dismiss for failure to state a claim. *See Nelson v. Monroe Regional Medical Center,* 925 F.2d 1555, 1559 (7th Cir.1991).

Section 218.0123 of the WMVDL (formerly § 218.01(2f)) prohibits a manufacturer from operating under a plan or system for the allocation of new vehicles that is "unreasonable, unfair or inequitable." It further requires a manufacturer to provide a written explanation of the basis for its allocation of vehicles to a dealer who requests it. In paragraphs 24a(A) and (F) plaintiffs allege no facts in support of their claim that GM violated the statute. Plaintiffs literally do no more than recite the words of the statute.[4]

---

**4.** The amended complaint alleges that:
  24a. Defendant GM breached Wisconsin's law by, including but not limited to, the following:

  A. Adopting, changing, establishing or implementing a plan or system for the allocation, scheduling and/or delivery of new motor vehicles, parts or accessories that is

They allege no facts from which one could infer that GM's distribution of vehicles was unfair, unreasonable or inequitable. Their allegations are wholly conclusory and thus fail to state a claim for relief.

Nor is plaintiffs' claim that GM allocated trucks unfairly, unreasonably, and inequitably saved by plaintiffs' allegations in paragraphs 9a-d that in September 1991 GM represented that its planning volume and financial forecast was for plaintiffs to receive 180 GMC trucks per year, but that for the next five years plaintiffs only received sixty per year. First, when the allegations of a complaint are inconsistent with the terms of a written contract attached as an exhibit, the terms of the contract prevail over the averments differing therefrom. *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 991 (7th Cir.1991); *Cousins Subs Sys., Inc. v. McKinney*, 59 F.Supp.2d 816, 819 (E.D.Wis.1999). In this case, the written contract attached as an exhibit to the complaint contradicts the complaint's allegations regarding GM's representations about how many trucks it would provide. In the franchise agreements between Gateway, Northgate, and GM, GM made no representation that it would provide a specific number of GMC trucks or any other type of vehicle, and in article 6.1 of the Standard Provisions, it "reserve[d] to itself discretion in ... distributing Motor Vehicles, and its judgments and decisions are final." (Def.'s Br. Ex. D art. 6.1.)

Second, even assuming that plaintiffs received fewer GMC trucks per year than anticipated, they allege no facts indicating that the distribution was inequitable. Plaintiffs allege no facts concerning either their own need for trucks or GM's treatment of other dealers relative to its treatment of them. The concept of unfairness is a relative one, and in the complete absence of a factual context plaintiff's allegations do not provide a basis from which it may reasonably be inferred. Thus, plaintiffs' claims in paragraphs 24a(A) and (F) regarding allocation will be dismissed for failure to state facts sufficient to constitute a valid claim for relief.

■■■■ The claim in paragraph 24a(D) must be dismissed for the same reason. In this paragraph plaintiffs allege that GM violated § 218.0116(1)(h) of the WMVDL (formerly § 218.01(3)(a)(15)). That section prohibits a manufacturer from coercing or attempting "to coerce any motor vehicle dealer to order any commodity or service or to accept delivery of or pay for any commodity or service that the motor vehicle dealer has not ordered." Again, plaintiffs' allegation does little more than recite the statutory language verbatim followed by the words "requiring the purchase of certain slow-moving vehicles in order to obtain hot-selling vehicles." As previously indicated conclusory statements entirely devoid of facts will not defeat a motion to dismiss. *Nelson*, 925 F.2d at 1559. Plaintiffs' allegation is so thin as to fall within this category. Plaintiffs provide insufficient facts from which it could be reasonably inferred that GM violated the statute or to enable GM to respond to the claim. A complaint's unsupported conclusions of fact or mixed fact and law are not accepted as true. *Tamari*, 565 F.2d at 1194–95. Thus, this claim will be dismissed for failure to allege sufficient facts to constitute a valid claim.

### 3. Claim of Breach of Contractual Duty of Good Faith and Fair Dealing

As previously indicated plaintiffs allege in the most general terms that GM breach-

---

not fair, reasonable and equitable; (Section 218.01, (2f) Wis. Statute Vehicle Allocations), specifically involving the GMC Truck Division;

   .    .    .    .    .

   F. Violating Section 218.01, (2f) and (2g). (pursuant to Section 218.01, (3)(a)(22)

Wis. Statute), implementing an allocation of GMC Trucks that is not fair, reasonable and equitable.

(Am.Compl.¶ 24a.)

ed a contractual duty of good faith and fair dealing. To the extent that this claim relates to GM's coercing plaintiffs into an agreement I have ruled that it is barred by issue preclusion. I now address the claim insofar as it relates to GM's alleged failure to deliver trucks allegedly promised to plaintiffs.

A duty of good faith and fair dealing is an implied condition in every contract and imposes a duty of cooperation on the part of both parties and an obligation to act honestly. *See generally In re Estate of Chayka,* 47 Wis.2d 102, 107–08, 176 N.W.2d 561 (1970). However, the duty imposes a relatively limited obligation on the parties and is not a basis for creating rights not expressly included in the contract. The Seventh Circuit underscored the limited nature of this duty when it stated that good faith "is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Kham & Nate's Shoes No. 2, Inc. v. First Bank,* 908 F.2d 1351, 1357 (7th Cir.1990). The Seventh Circuit recently concluded that under Wisconsin law a party seeking to show a breach of the duty of good faith and fair dealing as understood in *Chayka* "must show something that can support a conclusion that the party accused of bad faith has actually denied the benefit of the bargain originally intended by the parties." *Zenith Ins. Co. v. Employers Ins.,* 141 F.3d 300, 308 (7th Cir.1998) (citing *Foseid v. State Bank,* 197 Wis.2d 772, 541 N.W.2d 203 (1995); *Schaller v. Marine Nat'l Bank,* 131 Wis.2d 389, 388 N.W.2d 645 (Ct.App. 1986)).

Plaintiffs incorporate into their claim the allegation in paragraphs 9a–d that in September 1991 GM represented that it would provide 180 GMC trucks per year but for the next five years provided sixty per year. As previously discussed the complaint's allegation regarding how many trucks GM was contractually obliged to provide is contradicted by the agreements attached as exhibits to the complaint. Thus, the language of the exhibits controls. *Graue Mill Dev. Corp.,* 927 F.2d at 991 (7th Cir.1991). With respect to GM's obligation to provide vehicles, article 6.1 states GM "will endeavor to distribute new Motor Vehicles among its dealers in a fair and equitable manner" but that GM's "judgments and decisions are final." (Def.'s Br. Ex. D. art. 6.1.) Article 6.1 also lists a variety of factors affecting the fairness of the distribution of motor vehicles including "component availability and production capacity," "sales potential ..., consumer demand, weather and transportation conditions, governmental regulations, and other conditions." (*Id.*) As previously indicated plaintiffs allege no facts from which it could be inferred that GM treated plaintiffs inequitably. Plaintiffs likewise allege no facts suggesting that in allocating trucks GM did not consider the factors specified in the contract or that it considered factors not specified or otherwise inappropriate. Therefore, plaintiffs' claim that GM breached its common law duty of good faith and fair dealing will be dismissed.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss is **GRANTED IN FULL** and this case is **DISMISSED.**