Robert J. BUKOWSKI, Appellant,

v.

Nipulchandra PATEL, Appellee.

Nipulchandra Patel, Appellant,

v.

Robert J. Bukowski and Christine F. Bukowski, Appellees.

Nos. 99–C–0769, 99–C–1292, 99–C–1280, 99–C–1338.

United States District Court, E.D. Wisconsin.

Sept. 12, 2001.

Kenneth R. Nowakowski, Edward J. Heiser, Jr., James G. Allison, Whyte Hirschboeck Dudek, Milwaukee, WI, Bruce A. Lanser, Lanser Law Offices, Milwaukee, WI, for Robert J. Bukowski.

Kenneth R. Nowakowski, Edward J. Heiser, Jr., Whyte Hirschboeck Dudek, Milwaukee, WI, Bruce A. Lanser, Lanser Law Offices, Milwaukee, WI, for Christine F. Bukowski.

George P. Kersten, Kersten & McKinnon, Milwaukee, WI, for Nipulchandra Patel.

### *DECISION AND ORDER*

ADELMAN, District Judge.

In cases 99–C–0769 and 99–C–1292, debtor Robert Bukowski appeals the judgment of the bankruptcy court holding that a state court tort judgment rendered against him was not dischargeable under 11 U.S.C. § 523(a)(6), which precludes a debtor from discharging a debt caused by the debtor's willful and malicious injury to a person or property. In an adversary proceeding the bankruptcy court denied discharge and entered summary judgment in favor of creditor Nipulchandra Patel because it concluded that the state court judgment determined that Bukowski's conduct was willful and malicious, and that therefore issue preclusion barred Bukowski from attempting to litigate the issue in the bankruptcy proceeding. I have juris-

diction over Bukowski's appeal pursuant to 28 U.S.C. § 158(a) and Fed. R. Bankr.P. 8001.

## I. FACTUAL BACKGROUND

The facts are as follows:[1] Robert Bukowski formed Alpha Consulting Group, Inc. ("Alpha I") in 1989. Alpha I was an investment management consulting firm. Patel began working at Alpha I in November 1989. Patel alleged in the subsequent state court lawsuit that the parties agreed that he would move from New York to Milwaukee and would become a co-owner of the business. Bukowski allegedly agreed that once Alpha I became profitable he would issue stock to Patel. According to Patel, however, once the business did actually realize profits Bukowski refused to share and forced Patel out of the business.

Patel brought an action against Bukowski in Milwaukee County Circuit Court, seeking compensatory damages for Bukowski's refusal to share the business with him, as well as punitive damages. Patel brought four claims against Bukowski: (1) breach of contract, (2) promissory estoppel, (3) unjust enrichment, and (4) breach of fiduciary duty. He testified that Bukowski manufactured a "list of lies" in order to discredit his ownership claim, and that Bukowski never compensated him for his ownership interest in the business. Bukowski, however, testified that Patel was merely an employee of Alpha I and never had any ownership interest in the company.

The jury found for Patel on each claim and awarded him $542,391 in compensatory damages to cover all four claims. The jury also awarded punitive damages of $101,539. Bukowski and his wife petitioned for bankruptcy on July 10, 1996,

within a few weeks of the jury verdict and two days after the trial court denied their post-trial motions. Their debt to Patel represents the bulk of their indebtedness.

## II. STANDARD OF REVIEW

The bankruptcy court granted summary judgment to Patel. See Fed. R. Bankr.P. 7056(c). The grant of summary judgment in bankruptcy proceedings entails the resolution of a legal conclusion, hence my review is de novo. Peterson v. Scott (In re Scott), 172 F.3d 959, 966 (7th Cir.1999). To prevail on a motion for summary judgment Patel must show that there is no genuine issue as to any material fact, and that he is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether Bukowski has created a genuine issue of material fact, I construe all facts and reasonable inferences to be drawn therefrom in his favor. See id. at 257–58, 106 S.Ct. 2505.

## III. DISCUSSION

■ Issue preclusion, formerly known as collateral estoppel, precludes relitigation of an issue decided previously in judicial or administrative proceedings, provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding. See Allen v. McCurry, 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). In Grogan v. Garner, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the Supreme Court concluded that issue preclusion applies in dischargeability proceedings in bankruptcy. See also Klingman v. Levinson, 831 F.2d 1292, 1295 (7th Cir.1987) (applying collateral estoppel to bar relitigation of an issue decided by a state court).

---

1. I take the facts from the statement of the bankruptcy court.

■ In determining the preclusive effect of a state court judgment, the federal courts must, as a matter of full faith and credit, apply the forum state's law of issue preclusion. 28 U.S.C.A. § 1738 (West 1994); *see Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen*, 449 U.S. at 96, 101 S.Ct. 411. It is well recognized, therefore, that the forum state's law of issue preclusion applies in determining the dischargeability of debt. *In re Bulic*, 997 F.2d 299, 304 n. 6 (7th Cir.1993) (applying Indiana law of collateral estoppel to conclude that the debtor was precluded from relitigating the issues of fraud, deceit, and perjury in discharge proceedings because these were determined in state court). Thus, whether issue preclusion applies must be determined according to Wisconsin law.[2]

■ Under Wisconsin law issue preclusion limits the relitigation of issues that have been contested in a previous action between the same or different parties. *Michelle T. by Sumpter v. Crozier*, 173 Wis.2d 681, 687, 495 N.W.2d 327 (1993). The doctrine is intended to prevent parties from revisiting issues "actually litigated in a previous action." *Paige K.B. ex rel. Peterson v. Steven G.B.*, 226 Wis.2d 210, 219, 594 N.W.2d 370 (1999). The preclusive effect of prior litigation arises where " 'an issue is actually and necessarily determined by a court of competent jurisdiction.' " *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)); *see also Robinson v.*

*City of West Allis*, 239 Wis.2d 595, 614–15, 619 N.W.2d 692 (2000). The party asserting issue preclusion has the burden of establishing that the doctrine should be applied. *State ex rel. Hager v. Marten*, 226 Wis.2d 687 at 698, 594 N.W.2d 791 (1999). In addition, where appropriate, courts must conduct a "fundamental fairness" analysis to determine whether it is equitable to apply issue preclusion in a given case and in doing so may consider a variety of factors. *Michelle T. by Sumpter*, 173 Wis.2d at 698, 495 N.W.2d 327.

I must now determine whether issue preclusion precludes the dischargeability of the Wisconsin judgment pursuant to § 523(a)(6). The bankruptcy code provides in pertinent part: "A discharge [under the bankruptcy laws] does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a), (a)(6). In order for issue preclusion to apply, the issues of willfulness and maliciousness must have been determined by the Wisconsin judgment. Hence, Bukowski cannot discharge the Wisconsin judgment if his conduct giving rise to that judgment was determined to be "willful and malicious."

■ Although issue preclusion may preclude a bankruptcy court from relitigating previously-decided issues, the ultimate issue of dischargeability is a legal issue. *In re McNallen*, 62 F.3d 619, 625 (4th Cir. 1995). To further the policy of providing a debtor a fresh start in bankruptcy, debts are presumed to be dischargeable in bankruptcy. *See Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir.1994). Although creditors may bring adversary proceedings to

---

**2.** The bankruptcy court erroneously applied the federal law of issue preclusion. However, the federal standard is not materially different from the Wisconsin standard. *See Paige K.B.* *ex. rel. Peterson v. Steven G.B.*, 226 Wis.2d 210, 219, 594 N.W.2d 370 (1999). Thus, the analysis and the result are the same under either standard.

hold a debt nondischargeable, exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. *Id.*

In the present case the only disputed questions are whether issue of willful and malicious injury was determined in state court and, if so, whether determination of the issue was necessary to the judgment.

## A. Meaning of "Willful and Malicious Injury"

■ "Willful" means deliberate or intentional. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (hereafter *"Geiger"*). Prior to *Geiger* most courts held that an injury inflicted intentionally and deliberately, and either with the intent to cause the harm complained of, or in circumstances in which the harm was certain or almost certain to result from the debtor's act, was willful under § 523(a)(6). 4 Lawrence P. King, *Collier on Bankruptcy* § 523.12[1], at 523–92 (15th ed. rev.2001); *see, e.g., In re Scarlata*, 979 F.2d 521 (7th Cir.1992). In *Geiger* the Supreme Court held that the § 523(a)(6) exception is limited to conduct associated with "intentional torts" and does not encompass conduct that is merely negligent:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, *i.e.*, "reckless" or "negligent," to modify "injury." Moreover … the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from neg-

ligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself."

*Geiger*, 523 U.S. at 61–62, 118 S.Ct. 974.

In *Geiger* the Supreme Court did not clearly specify the scope of the term "intent," which it used to define willful conduct. The Court did not state whether the debtor must have a subjective intent to injure the creditor or whether willfulness may also be established by showing that the debtor knew that injury was substantially certain to result from his acts. *See* Chad A. Cutshall, *The Scope of Intentional Injury Under Kawaauhau v. Geiger, 118 S.Ct. 974, (1998)*, 78 Neb. L.Rev. 470, 483 (1999). The Seventh Circuit has not addressed this issue.

However, the *Geiger* Court's citation with approval of *McIntyre v. Kavanaugh*, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916), suggests that a specific intent to injure is not necessary. In *McIntyre*, a case which held that a debt arising from the debtor's conversion of the creditor's property was excepted from discharge under § 523(a)(6), the Court stated that a wrongful act, voluntarily committed with knowledge that the act is wrongful and which necessarily causes injury meets the willful and malicious standard. The *Geiger* Court described *McIntyre* as holding that the act constituted an intentional injury to property. *Geiger*, 523 U.S. at 63, 118 S.Ct. 974.

Similarly, the Supreme Court's reliance on the Restatement (Second) of Torts § 8A (1964) indicates that intent would include circumstances where the debtor has subjective knowledge that injury is substantially certain to result. Cutshall, *supra*, at 484–85. The Restatement definition requires the actor either to desire the consequences of an act or to know that the consequences are substantially certain to

result. Restatement (Second) of Torts § 8A (1964), *cited in Geiger*, 523 U.S. at 61–62, 118 S.Ct. 974.

This definition has been adopted by a number of circuit courts. In *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir.), *cert. denied*, 121 S.Ct. 2552 (2001), the Ninth Circuit held that

> the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury *or* that the debtor believed that injury was substantially certain to occur as a result of his conduct. We believe that this holding comports with the ... bankruptcy law's fundamental policy of granting discharges only to the honest but unfortunate debtor.

The Fifth and Sixth Circuits have adopted similar approaches. The Fifth Circuit has held *Geiger* to be satisfied where "the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury." *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 604 (5th Cir.1998). Under this approach an injury is "willful" under § 523(a)(6) if the debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury. *See id.* The Sixth Circuit has also held that a debtor must will or desire the harm, or believe that injury is substantially certain to occur as a result of his behavior before a resulting debt will be excepted from discharge under § 523(a)(6). *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 465 (6th Cir.1999).

Further, in *Geiger*, the Supreme Court affirmed an Eighth Circuit decision holding that the willfulness requirement was satisfied if the debtor "believed that it was substantially certain that [the creditor] would suffer harm." *Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848, 852–53 (8th Cir.1997), *aff'd* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

Defining the scope of intent in this way has the virtue of achieving the proper balance between the competing policy considerations underlying the Bankruptcy Code. The honest debtor is permitted a fresh start and at the same time creditors are protected from the discharge of debts arising from conduct that was intended to injure or that the debtor knew was substantially certain to injure the creditor. *See* Cutshall, *supra*, at 489–90. Thus, I conclude that a person acts willfully under § 523(a)(6) when he intends to injure or when he is substantially certain that his conduct will cause injury to the creditor.

"Malicious," as used in § 523(a)(6) means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm. *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994).

"Injury" means the violation of another's legal right or the infliction of an actionable wrong. Black's Law Dictionary 785–86 (6th ed.1990). Thus, injuries covered by the § 523(a)(6) discharge include violations of personal or property rights. 4 King, *supra*, § 523.12[2], at 523–92.2; *see, e.g., In re Riso*, 978 F.2d 1151 (9th Cir.1992) (contract rights); *In re Rushing*, 161 B.R. 984 (Bankr.E.D.Ark.1993) (rights in real property); *Herman v. Remick (In re Remick)*, 96 B.R. 935 (Bankr.W.D.Mo. 1987) (willful copyright infringement).

Further, the concept of injury should not be confused with that of damage. *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 454 (Bankr.N.D.Ind.2001). An injury to a creditor occurs when a debtor violates a legally protected right of the creditor. The violation of the right constitutes the injury, and the magnitude

of the injury is measured by the amount of damages. *Id.* Thus, the inquiry as to whether an injury was intentional focuses on whether the debtor intended to violate a legal right of the creditor, not on the extent of damage resulting from the violation. *Id.*

## B. State Court Determination

[17, 18] The question remains whether the state court determined that Bukowski's conduct constituted willful and malicious injury and, if so, whether such determination was necessary to its decision. Under Wisconsin law an issue is determined if it is put into issue by the pleadings, submitted to the trier of fact, and determined by the trier of fact. *Northgate Motors, Inc. v. Gen. Motors Corp.*, 111 F.Supp.2d 1071, 1077–79 (E.D.Wis.2000). An issue is necessarily determined if it is essential to the judgment. *Id.*

▆▆ The state court jury found for Patel on each of his claims. However, these findings in themselves do not mean that the jury determined that Bukowski's conduct caused willful and malicious injury. The jury instructions relating to such claims, at most, asked whether Bukowski acted intentionally rather than whether he was substantially certain that his conduct would cause injury to Patel.

However, the jury also awarded Patel punitive damages. In order to impose punitive damages, the jury was instructed that it had to find that Bukowski:

> acted maliciously toward the plaintiff, or in an intentional disregard of the rights of the plaintiff. A person's acts are malicious when they are the result of hatred, ill will, a desire for revenge, or inflicted upon circumstances where insult or injury is intended. A person acts in an intentional disregard of the rights of the plaintiff if the person acts with the purpose to disregard the plaintiff's

> rights, or is aware that his or her acts are practically certain to result in the plaintiff's rights being disregarded.

(Appellant's Br. in Supp. of Appeal, Ex. B at 24–25.) *See also* Wis. Stat. § 895.85(3).

▆▆ Thus, the jury awarded punitive damages either because Bukowski acted maliciously or in an intentional disregard of Patel's rights. In either case the jury necessarily found that Bukowski's conduct was willful, i.e., that he intended to harm Patel or was substantially certain that his conduct would injure Patel. If the jury found that Bukowski acted maliciously, it obviously concluded that he intended to injure Patel. If the jury found that Bukowski acted in an intentional disregard of Patel's rights the willfulness requirement is also satisfied. Bukowski argues that he could have acted with intentional disregard for Patel's rights without being substantially certain that his conduct would injure Patel. However, this argument must be rejected. One who intentionally violates another's legal rights acts with intent to cause injury. *In re Singer Co., N.V.*, 262 B.R. 257 at 264 (Bankr.S.D.N.Y.2001). And there is no substantive difference between a party intentionally disregarding another's legal rights and intentionally violating such legal rights.

The jury found that Patel had an interest in the Alpha I business and that Bukowski improperly prevented him from obtaining the benefit of that interest. Based on such conduct the jury imposed punitive damages. The formulation used by the state court in connection with punitive damages is essentially the same inquiry that is made in determining whether a debt is nondischargeable under § 523(a)(6). If the jury awarded punitive damages because it found that Bukowski engaged in such conduct in intentional disregard of Patel's rights, it necessarily

found that Bukowski knew that such conduct was substantially certain to injure Patel. The jury could not have awarded punitive damages if Bukowski's conduct was reckless; it could have awarded punitive damages only if it concluded that he knew what the consequences would be.

Further, whether the jury awarded punitive damages because it found that Bukowski acted maliciously or in intentional disregard of plaintiff's rights, in either case it necessarily found that Bukowski's conduct was malicious under § 523(a)(6). One who acts maliciously or who intentionally disregards the rights of another necessarily disregards "one's duties [and acts] without just cause or excuse." *In re Thirtyacre*, 36 F.3d at 700.

Bukowski also argues that even if the jury did find his conduct to be willful and malicious, the extent to which such finding was essential to the compensatory damage award cannot be determined. He contends that because punitive damages were unavailable on at least two of his four state court claims—the breach of contract and promissory estoppel claim—and because, pursuant to the court's instructions, the jury made one lump sum compensatory damage award (rather than allocating damages to each claim), it is impossible to know how much of the compensatory damage award was for willful and malicious conduct.[3] Bukowski relies on *Fischer v. Scarborough (In re Scarborough)*, 171 F.3d 638, 642–43 (8th Cir.1999), in which the court examined each claim upon which the jury awarded compensatory damages to determine whether a finding of willful and malicious injury was essential to the jury's finding of liability. He argues that a similar analysis of each claim is required

here, but that such analysis is impossible because there was only one compensatory damage award. Therefore, he contends that the entire compensatory damage award should be held dischargeable or, alternatively, that the case should be remanded to the bankruptcy court for apportionment. Patel responds that, even if possible, apportionment would be improper because the jury verdict was based on a single course of conduct by Bukowski.

I agree with Patel. Bukowski's reliance on *Scarborough* is misplaced. In *Scarborough*, the jury awarded compensatory damages on a claim that involved willful and malicious conduct. The jury also imposed a punitive damage award. The issue was whether the punitive damage award also involved willful and malicious conduct. The court held that "where the compensatory and punitive damage awards are *based on the same underlying conduct,* and the judgment for compensatory damages is nondischargeable because it is based on willful and malicious injury to another, then the punitive damages award is likewise nondischargeable." *Id.* at 644 (emphasis added). In the present case Patel's claims did not involve a variety of different acts by Bukowski. Rather, Patel's allegation was simple: that Bukowski prevented him from receiving benefits to which he was legally entitled. Both the compensatory and punitive damage awards were based on this conduct. The jury's award of punitive damages was judgment that such conduct was willful and malicious. Thus, none of the award is dischargeable.

The centrality of the debtor's conduct to the nondischargeability analysis is reflected in numerous cases. *See, e.g., In re*

---

3. Bukowski argues that such uncertainty also applies to the unjust enrichment claim because, although punitive damages were available on this claim as well as on the breach of

fiduciary duty claim, only the latter claim necessarily involved willful and malicious conduct.

*McNallen,* 62 F.3d at 626 (indicating that answers to special verdict questions and punitive damage award established debtor's maliciousness); *Coen v. Zick,* 458 F.2d 326, 329–30 (9th Cir.1972) ("The statutory exception which measures nondischargeability .... for liabilities ... for willful or malicious injuries .... is measured by the nature of the act."); *Moraes v. Adams (In re Adams),* 761 F.2d 1422, 1427 (9th Cir. 1985) (rejecting argument that nondischargeability must necessarily be limited to debts arising from awards of punitive damages); *Hoult v. Hoult (In re Hoult),* 243 B.R. 818, 823 (Bankr.M.D.Fla.1999) ("[T]he verdict is based on the Debtor's conduct. No matter which theory is the basis for the award of damages .... the jury inclusively decided that the Debtor intended to harm [the creditor]."); *Scott v. Hall (In re Hall),* 98 B.R. 777, 781 (Bankr. S.D.Ohio 1989) (finding it unnecessary to decide whether jury instructions for actual damages necessitated a determination of willful injury because the jury awarded punitive damages and could only have done so if it had necessarily found that the debtor's conduct constituted willful injury); *Norton v. Dean (In re Dean),* 79 B.R. 659, 663 (Bankr.N.D.Tex.1987) ("[P]unitive and compensatory damages flow from one and the same course of conduct .... Where willfulness and malice exist, then compensatory and punitive damages flowing therefrom are non-dischargeable under § 523(a)(6).").

Bukowski argues that he cannot be considered to have engaged in a single course of conduct because each of Patel's state court claims required proof of different facts. This argument, however, mistakenly conflates Bukowski's conduct with the legal elements of Patel's claims. While each state court claim required proof of different elements, e.g., promissory estoppel requires reliance on a defendant's promises, and unjust enrichment requires that a benefit be conferred on a defendant, these differing requirements merely mean that plaintiff had to cast the same facts in a different light for each claim. The underlying conduct that gave rise to all the claims remained the same. The jury awarded punitive damages on the basis of such conduct. Patel's amended complaint in state court alleged as factual support for each claim the same conduct, i.e., that instead of complying with his agreement with Patel, Bukowski forced Patel out of business and thereby caused him substantial harm. (Bankr.R. at 27, Ex. 1, ¶¶ 2–8, 13, 15.) The state court judgment is a statement that this conduct occurred, and the punitive damage award is a statement that it caused willful and malicious injury.

## IV. CONCLUSION

When the state court awarded punitive damages it determined that Bukowski's conduct caused willful and malicious injury. Further, such determination was necessary because without such determination the court could not have awarded punitive damages. Additionally, it is not fundamentally unfair to apply issue preclusion in this case. In fact, it would be fundamentally unfair not to apply it. The purpose of issue preclusion is to protect litigants from having to relitigate an issue that has already been conclusively established in a previous proceeding. In this case the jury heard days of testimony and found that Bukowski acted with knowledge that his conduct was substantially certain to injure Patel. The bankruptcy court therefore correctly decided that the state court judgment had issue preclusive effect on the question of the nondischargeability of the debt under § 523(a)(6).

**ACCORDINGLY, IT IS ORDERED** that in appeals 99–C–0769 and 99–C–1292, the bankruptcy court's grant of summary

judgment in favor of the creditor on creditor's § 523(a)(6) claim is **AFFIRMED**.

This disposes of appeals cases 99–C–0769 and 99–C–1292. I note that the remaining two cases, 99–C–1280 and 99–C–1338, remain consolidated. Case number 99–C–1280 will become the lead case for docketing purposes.

**IT IS FURTHER ORDERED** that a status conference will be held on Friday, September 21, 2001, at 2:00 p.m., in Room 204 of the Federal Courthouse to discuss the pending appeals in 99–C–1280 and 99–C–1338, and whether they are mooted by this Decision and Order.