In re: Susan Marie GUSTIN, Debtor.

No. 04–12784.

United States Bankruptcy Court, W.D. Wisconsin.

Dec. 6, 2005.

Victoria J. Hewelt Cazel, Madison, WI, for Debtor.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

Susan Gustin filed a Chapter 7 bankruptcy in this court on April 16, 2004. Jean Woodruff held a claim against her based on a 2003 car accident. However, the debtor did not name Ms. Woodruff in her bankruptcy schedules until January 26, 2005. By that time the debtor's assets were fully administered and the trustee had filed a final account. Apparently, the debtor was prompted to add Ms. Woodruff after she received a notice that Ms. Woodruff was pursuing a motion for default judgment against her in state court.

Ms. Woodruff had sued in Dane County Circuit Court to recover for the damage to her car. At that time Ms. Woodruff had no notice of the debtor's bankruptcy. The debtor was first served with Ms. Woodruff's complaint on June 8, 2004. The following day she notified her attorney. The debtor's attorney checked Wisconsin

Circuit Court Access (WCCA) and noticed that Ms. Woodruff had not paid the filing fee. The attorney did not notify Ms. Woodruff of the bankruptcy, but continued to monitor the case on WCCA until, and for a short time after, the filing fee was due. She then ceased monitoring the case, apparently believing that it was no longer being pursued. Still neither the debtor nor her attorney notified Ms. Woodruff of the bankruptcy. However, the filing fee was eventually accepted by the state court and Ms. Woodruff's case continued.

On December 17, 2004 Ms. Woodruff, still unaware of the debtor's bankruptcy, moved for default judgment in her civil suit. A copy of the motion was sent to the debtor. A final hearing on Ms. Woodruff's motion for default judgment was set for January 27, 2005. That hearing was not conducted.

Notice of the debtor's bankruptcy was sent to Ms. Woodruff by this court on January 27, 2005, the day after the debtor amended her schedules. The debtor claims that Ms. Woodruff's attorney was notified of the bankruptcy by telephone on December 27, 2004. In any event, it was after the debtor's bankruptcy estate had been distributed.

The notice sent by this court gave Ms. Woodruff until February 28, 2005 to file an objection to the discharge or a complaint to determine the dischargeability of the debt. It included a copy of the original Notice of Commencement of Case and informed Ms. Woodruff that the deadlines had been extended until February 28, 2005 to provide her with adequate notice. However, the Notice of Commencement of Case stated **Please Do Not File a Proof of Claim Unless You Receive a Notice To Do So.** Ms. Woodruff did not receive notice instructing her to file a proof of

claim or an extended deadline to do so. Ms. Woodruff did not file an objection to discharge or an objection to the dischargeability of debt. The debtor was granted discharge on January 27, 2005 and the debtor's bankruptcy case was closed on March 29, 2005.

On July 19, 2005, the debtor filed a motion in this court to reopen her chapter 7 case to start contempt remedies for violation of the discharge injunction. The debtor based her claim on alleged violations of 11 U.S.C. § 362 and 11 U.S.C. § 524(a)(2) due to Ms. Woodruff's continued state court action. Ms. Woodruff has defended on the basis that the state court has already ruled on these issues.

Before granting a default judgment on the complaint, the state court considered whether the debt to Ms. Woodruff was excepted from the debtor's bankruptcy discharge. At its July 21, 2005 hearing, the state court found that Ms. Woodruff's claim was excepted from discharge under 11 U.S.C. § 523(a)(3)(A) because Ms. Woodruff was not listed as a creditor in time for her to file a proof of claim. Judgment was entered in favor of Ms. Woodruff for $10,188.84.

On August 30, 2005 both parties appeared before this court for a hearing on the Debtor's Motion to Re–Open the Chapter 7 Case to Seek Contempt Remedies. The matter was taken under advisement.

■ The first question is whether the *Rooker–Feldman* doctrine applies. "As a general rule, the *Rooker–Feldman* doctrine prevents bankruptcy courts from exercising subject matter jurisdiction over claims if doing so would require them to engage in the appellate review of a state court judgment"[1] Ms. Woodruff contends

**1.** Professor A. Mechele Dickerson, *Colliding Judgments: Applying the Rooker–Feldman Doctrine in Bankruptcy Cases,* 79th Annual Meeting of the National Conference of Bankruptcy Judges, 8–23.

that this court lacks jurisdiction to overturn the judgment entered by the Dane County Circuit Court based on *Rooker–Feldman.* I disagree.

■ The United States Supreme Court recently clarified *Rooker–Feldman* by restating that the doctrine precludes federal subject matter jurisdiction only when, after state proceedings have ended, the party who lost in state court files suit in federal court complaining of an injury caused by the state court judgment and seeking review and rejection of that judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), See *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

■ The narrow interpretation of the *Rooker–Feldman* doctrine established by *Exxon Mobil Corp.* makes clear that the doctrine only applies to cases filed by "state court losers" attempting to have a federal court reexamine a state court decision. The debtor filed the motion at issue in this court on July 19, 2005. She was not a state court loser at that time. The state court hearing which decided the issue of whether the debt was discharged did not take place until July 21, 2005, and the judgment was not entered until July 26, 2005. Timing is everything. At the time the debtor brought her motion in federal court she was not a state court loser, she was a party in a parallel proceeding.

■ *Exxon Mobil* holds that "when there is parallel state and federal litigation, *Rooker–Feldman* is not triggered simply by the entry of judgment in state court." *Id.* at 1526–7. "The pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* Where two cases concerning the same matter are being heard, one in federal and one in state court, "disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law." *Id.* at 1520.

■ Although the *Rooker–Feldman* doctrine does not apply to the particular facts of this case, this court is bound to respect the decision entered in state court based on issue preclusion. The state court, which determined that the debt was not discharged, has concurrent jurisdiction with the bankruptcy court over issues contested under § 523(a)(3)(A) and a final decision by either court precludes relitigation in the other. *Eden v. Robert A. Chapski, Ltd.,* 405 F.3d 582, 586 (7th Cir.2005). Such finality is essential. Parties that continue to have a dispute concerning dischargeability of debts after a bankruptcy case is administered have three options for how to litigate. That litigation could occur in different courts depending on the option chosen. First, if a creditor sues on the claim, the debtor can assert the bankruptcy discharge as an affirmative defense and the court with jurisdiction over that lawsuit can decide whether the debt falls within any of the exceptions to discharge. Second, either the debtor or creditor can bring an action in the bankruptcy court to determine dischargeability. Third, the debtor can bring an action in the bankruptcy court to enforce the discharge injunction against a creditor attempting to collect discharged claims. *In re Mendiola,* 99 B.R. 864, 870 (Bankr.N.D.Ill.1989). Once the issue is decided in one court, the parties cannot try again under another option in a different court if they do not like the result. "The purpose of issue preclusion is to protect litigants from having to relitigate an issue that has already been conclusively established in a previous proceeding." *Bukowski v. Patel,* 266 B.R. 838, 847 (E.D.Wis.2001).

A federal court must apply the forum state's law of issue preclusion to determine the preclusive effect of a state court judgment. *Id.* at 842. Under Wisconsin law, "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Landess v. Schmidt,* 115 Wis.2d 186, 197, 340 N.W.2d 213 (1983). Also, where appropriate, the court must conduct a "fundamental fairness" analysis to determine whether it is equitable to apply issue preclusion. *Bukowski,* 266 B.R. at 842.

The debtor already attempted to have the debt to Ms. Woodruff determined discharged by asserting discharge as an affirmative defense in state court. She lost. Now the debtor is before this court attempting to attack the state court judgment by claiming that Ms. Woodruff has violated the discharge injunction. In doing so, the debtor would have this court reexamine the issue of whether the debt was discharged in bankruptcy. However, that issue was already decided in state court, and the doctrine of issue preclusion prevents relitigation here.

The state court hearing held on July 21, 2005 in Dane County Circuit Court offered the debtor and Ms. Woodruff an opportunity to litigate the issue of dischargeability. Prior to determining whether Ms. Woodruff could proceed on her motion for default judgment, the state court chose to determine whether the debt was discharged. To make that essential determination the court heard arguments from both parties, presented by their respective attorneys. On July 26, 2005, judgment was entered in favor of Ms. Woodruff. The Court found that "pursuant to 11 U.S.C. § 523(a)(3)(A), the debt owed by Defendant to Plaintiff was not discharged."

The court ordered that "a total money judgment in the sum of $10,188.84 be paid by Defendant." That determination by the state court was fundamentally fair and was not appealed. It may not now be attacked in this court.

The debtor's claim for damages under § 362(h) is also without merit. Section 362(h) allows individuals injured by a *willful* violation of the automatic stay to recover damages. Although Ms. Woodruff's state court action may have been commenced in violation of the automatic stay, there is no indication that it was willful. The debtor cites *In re Sumpter,* 171 B.R. 835 (Bankr.N.D.Ill.1994) for her position that Ms. Woodruff's actions in bringing the civil suit warrant sanctions. I am not convinced.

In *In re Sumpter* creditors had removed personal property from the debtor's home after they had learned that the debtor had filed bankruptcy. The court found that the "creditors' actions were deliberately done with knowledge that the bankruptcy case was pending and such actions were willful." *Id.* at 843. "When a creditor engages in conduct which violates the automatic stay, with knowledge that a bankruptcy petition had been filed, it can be considered a willful violation of the stay subjecting the creditor to liability for damages under section 362(h)." *Id.*

Ms. Woodruff did not willfully violate the stay in bringing the state court action. She didn't know about the bankruptcy at that time. The debtor failed to notify Ms. Woodruff of the bankruptcy and has provided no evidence that Ms. Woodruff had actual notice of the bankruptcy. Upon learning of the bankruptcy, Ms. Woodruff appears to have halted pursuit of her state court claim. When Ms. Woodruff resumed her state court action the automatic stay was no longer in effect, and it certainly was not in effect when the state court order was entered. 11 U.S.C. § 362(c)(2).

Therefore, the Dane County Circuit Court order determining that the debt is nondischargeable was not made in violation of the automatic stay.

For the foregoing reasons, the debtor's motion to reopen her Chapter 7 case to seek contempt remedies is denied.

Although we need not (and may not) reach the issue, it appears that the state court's determination of the effect of the debtor's bankruptcy discharge on the claim of Ms. Woodruff was correct as a matter of law. This is a comfort.