**In re David M. LARSEN, Debtor.**

**Teri Jendusa–Nicolai and David M. Nicolai, and A.M.L. and H.A.L., minors, by their Guardian Ad Litem, Patrick O. Dunphy, Plaintiffs,**

v.

**David M. Larsen, Defendant.**

**Bankruptcy No. 09–22963–mdm.
Adversary No. 09–2231.**

United States Bankruptcy Court,
E.D. Wisconsin.

Jan. 29, 2010.

Sarah F. Kaas, Cannon & Dunphy, S.C., Brookfield, WI, for Plaintiffs.

David Michael Larsen, Waupun, WI, pro se.

## MEMORANDUM DECISION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

MARGARET DEE McGARITY, Chief Judge.

The plaintiffs, Teri Jendusa–Nicolai, David M. Nicolai, A.M.L. and H.A.L., brought this adversary proceeding objecting to the dischargeability of certain obligations incurred by the debtor, David M. Larsen. After the defendant filed his answer, the plaintiffs moved for summary judgment asserting they were entitled to a nondischargeability judgment pursuant to 11 U.S.C. §§ 523(a)(6) and 523(a)(5).

This Court has jurisdiction under 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This decision constitutes the Court's findings of fact and conclusions of law under Fed. R. Bankr.P. 7052.

## BACKGROUND

The following events were summarized in court transcripts and the plaintiffs' pleadings and briefs and, except as set forth in the arguments below, are largely uncontroverted by the debtor. The debtor, David M. Larson, and his former wife, Teri Jendusa–Nicolai, commenced divorce proceedings in November 1999. (*Teri S. Jendusa v. David M. Larsen*, Racine County Case No.1999FA001626). The divorce was granted on January 31, 2001.

On the morning of the three-year anniversary of the divorce, Ms. Jendusa–Nicolai went to the home of the debtor to pick up their daughters. After arriving, the debtor attacked Ms. Jendusa–Nicolai and beat her with a baseball bat. He then bound her hands and face with duct tape to prevent her escape, stripped her of her pants, shoes and socks, placed her in a trash can partially filled with snow, and placed the trash can in the unheated cargo box of his pickup truck. He then transferred the trash can with Ms. Jendusa–Nicolai in it to an unheated storage space that he had previously rented, placed boxes on top of the trash can to prevent her escape, and left. Ms. Jendusa–Nicolai remained in the trash can for over 18 hours before she was rescued through the efforts of various police agencies and others.

As a result of the assault and abandonment in the storage facility, Ms. Jendusa–Nicolai suffered severe injuries, including bruising and contusions, facial lacerations, hypothermia, the loss of all ten of her toes to frostbite and a miscarriage.

The debtor ultimately pleaded no contest to state charges of attempted homicide while armed and interference with custody. (*State of Wisconsin v. David M. Larsen*, Racine County Case No.2004CF000126). He was sentenced to 37 years in state prison.

Because the debtor had transported Ms. Jendusa–Nicolai across state lines, he was also charged in federal court of Kidnapping under 18 U.S.C. § 1201(a)(1) and Interstate Domestic Violence under 18 U.S.C. § 2261(a)(2). (*United States v. David Michael Larsen*, E.D. Wis. Case No. 04–Cr–29). After a three-day trial to the court, the federal district court judge made the following findings of fact and conclusions of law:

Count One of the superceding indictment charges Larsen with kidnapping, in violation of 18 U.S.C. § 1201(a)(1). The elements of kidnapping under § 1201(a)(1) are: (1) that the defendant knowingly and willfully seized, confined, kidnapped, abducted or carried away a person; (2) that the defendant held such a person; and (3) that such person was thereafter transported in interstate commerce while so confined or kidnapped.

The government proved all three elements beyond a reasonable doubt. Lar-

sen admits that he beat Jendusa–Nicolai, entrapped her in a garbage bin, placed the garbage bin in which she was confined in the bed of his truck, and crossed a state line.... Accordingly, the government proved its case beyond a reasonable doubt as to Count One....

Count Two of the superceding indictment charges Larsen with interstate domestic violence, in violation of 18 U.S.C. § 2261(a)(2). The elements of a violation under § 2261(a)(2) are (1) the defendant and victim were spouses or intimate partners (including former spouses); (2) the defendant caused the victim to cross a state line by force, coercion, duress, or fraud; (3) in the course of or as a result of that conduct, the defendant committed a crime of violence upon the victim; and (4) as a result of the crime of violence, the victim was bodily injured.

The government proved these elements beyond a reasonable doubt. Larsen and Jendua–Nicolai were former spouses. He used considerable force by beating her with a baseball bat and entrapping her in a garbage bin at his home in Wisconsin. The beating he inflicted upon her enabled Larsen to then move her into Illinois where he imprisoned her in his storage facility. During the course of that travel, Larsen beat her again when he saw that she had freed a hand. Jendusa–Nicolai also suffered considerable bodily injury as a result of Larsen's conduct, including the amputation of her toes and the miscarriage of her unborn child. Accordingly, the government proved the elements of § 2261(a)(2) beyond a reasonable doubt.

(Decision and Order entered on March 18, 2008, by Judge Rudolph T. Randa in Eastern District of Wisconsin District Court Case No. 04–Cr–29, pp. 3–5) (citations and footnotes omitted). The debtor was subsequently sentenced concurrently to the state case to imprisonment for a life term on the kidnapping offense and 120 months on the domestic violence offense. The final judgment of conviction and sentence in the debtor's federal criminal case is currently on appeal.

Ms. Jendusa–Nicolai and her family commenced a civil suit against the debtor for compensatory and punitive damages. (*Terri S. Jendusa Nicolai, et al. v. David M. Larsen,* Racine County Case No.2004CV000809). The civil case was stayed until the debtor was convicted of criminal charges. A bench trial in the civil action was subsequently held, with the debtor present and represented by counsel. On June 19, 2008, the Racine County Circuit Court ruled in favor of the plaintiffs on their claims for assault and battery, intentional infliction of emotional distress, false imprisonment, and loss of society and companionship.

On July 22, 2008, the state court rendered judgment against the debtor, and in favor of the creditors, as follows: Ms. Jendusa–Nicolai, $3,410,785.38; David M. Nicolai, the husband of Ms. Jendusa–Nicolai, $201,839.54; and the children of Ms. Jendusa–Nicolai and the debtor, $50,459.89 each.[1] In support of those judgments, the state court judge made the following relevant findings of fact and conclusions of law:

---

1. The damages were apportioned as follows: $277,271.92 for Ms. Jendusa–Nicolai's past medical expenses; $102.428.00 for Ms. Jendusa–Nicolai's future medical expenses; $500,000.00 for Ms. Jendusa–Nicolai's past pain, suffering, disability and disfigurement; $500,000.00 for Ms. Jendusa–Nicolai's sever emotional distress; $50,000.00 for A.M.L.'s loss of her mother's society and companionship; $50,000.00 for H.A.L.'s loss of her mother's society and companionship; $200,000.00 for David M. Nicolai's loss of his wife's society and companionship; $1,500,000.00 punitive damages.

... The original complaint here alleges battery, false imprisonment, and intentional infliction of emotional distress. I reviewed [jury] instruction 2005, battery, physical harm. There is no doubt that the elements of that offense have been demonstrated by the plaintiff, and it's not really contested by the defense. But the necessary elements are there. This is the regular burden of proof. Intentionally caused harm, no consent to that causing of the harm, and the harm was caused.

I have reviewed [jury instruction] 2100, false imprisonment. Again, the elements are met by the plaintiff in this case. The defense is not contesting that that happened, so I can make the finding clearly based on the evidence that in addition to a battery, a false imprisonment occurred.

I have reviewed [jury instruction] 2110, which is the patterned instruction on compensatory damages for false imprisonment, and I've reviewed patterned instruction 2725 for intentional infliction of emotional distress with the four elements there. Again, the conduct was intended to cause emotional distress. It was extreme or outrageous, it did cause emotional distress, and the fourth one, that emotional distress was extreme and disabling. No doubt in the Court's mind that the evidence demonstrates the elements of that offense are present, giving rise to the ability to recover civilly, in civil court for that behavior.

... I'll use [the proposed verdict form] as a structure for making the Court's judgment and award.

Question Number 1 asks was there an assault and battery. The answer is yes. Did it cause her damages, Number 2. Yes. 3, did Mr. Larsen falsely imprison Miss Jendusa–Nicolai. Answer yes. Was the false imprisonment a cause of Miss Nicolai's injuries and damages. Yes. Question Number 5, did the defendant, David Larsen, intend to cause Miss Nicolai severe emotional distress by outrageous conduct. I will answer that yes. There is no other way to answer that.... based on the testimony that I have heard, the circumstantial evidence, everything surrounding what happened on January 31 and February 1, the Court can reach no conclusion other than he intended to cause her severe emotional harm at a minimum. I think the evidence shows he intended to cause her death. But as far as this case is concerned, I think the evidence is ample that he intended to cause her severe emotional distress by his conduct, which is outrageous or was outrageous and Number 6, did she suffer severe emotional distress by the outrageous conduct, answer yes. That gives the Court the basis for rendering the damage award.

. . .

... I don't believe this was heat of passion. Not for one minute. I believe Mr. Larsen contemplated. Contemplated what he was going to do when his ex-wife arrived to pick up the kids, and he executed that plan as he had formulated it. He had the ability to think about the consequences of his behavior, because he tried to mislead the police. He towed her car away. He hid her away out of state. He denied having any knowledge of it when he was being interrogated. This was not the heat of passion. It is not in any way, no way—excuse me. It in no way mitigates the responsibility.

So then I have to look at four things [when awarding punitive damages]. Number one, the grievousness of the defendant's acts. This is probably one of the most shocking and horrifying cases that I've ever come across....

So this is a truly grievous act perpetrated on Miss Jendusa–Nicolai by Mr. Larsen. The degree of malice involved.... The malice is almost incomprehensible.

I know Mr. Larsen's position is and will be to the day he dies that he was driven to this break in his sanity by her conduct, and I don't disagree that they each knew how to push each other's buttons and did so. It does not in any way lessen or eliminate the finding that the degree of malice here was absolute hatred, absolute malice, to strike her repeatedly even when she tried to get out to push her back in the can and beat her again, threaten to shoot her with a .38, I think that's all credible, and it happened. And it demonstrates an extreme degree of malice.

(Transcript of Oral Decision rendered on June 19, 2008, by Judge Stephen A. Simanek in Racine County Case No.2004CV000809, pp. 19–28). The state civil court's decision and judgments were not appealed.

Pursuant to the family court order, Mr. Larsen is obligated to pay $845.43 per month in child support for each of his two children, for a total of $1,690.87 per month. (Racine County Circuit Court Case No.1999FA001626). Although the debtor disputed the current amount of monthly child support owed, he acknowledged that such obligations were nondischargeable. (Answer to Complaint filed September 10, 2009, ¶ 1).

### ARGUMENT

The creditors argue the principles of issue preclusion bar relitigation of the Racine County Civil Court's findings and final judgments which establish a willful and malicious injury for purposes of 11 U.S.C. § 523(a)(6).

The debtor argues the state court's finding of liability does not equate with a finding that he caused a willful and malicious injury under 11 U.S.C. § 523(a)(6). Rather, the debtor's conduct falls under the "reckless disregard" standard and the resultant damages are dischargeable. Additionally, the judgment is comprised of damages for indirect injuries to persons who never had contact with the debtor and includes punitive damages. The elements of issue preclusion are not satisfied because the state court's findings do not translate into a finding that each judgment was the result of a willful and malicious injury. The civil proceedings were not fair because the state court did not consider the debtor's psychogenic amnesia, leaving him unable to present his side of the events. Furthermore, the debtor did not have appellate counsel appointed, making an appeal of the civil judgments impossible.

### DISCUSSION

*Standards for Summary Judgment and Issue Preclusion to this Proceeding*

To prevail on a motion for summary judgment the moving party must show there is no genuine issue of material fact and he or she is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). To determine if there is a genuine issue of material fact all facts are construed in the light most favorable to the non-moving party. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir.2003). Additionally, all reasonable inferences are drawn in favor of that party. *Id.* However, the non-movant must set forth "specific facts showing that there is a genuine issue for trial" which requires more than "just speculation or conclusory statements." *Id.* at 283 (citations omitted).

First, as a matter of full faith and credit a federal court must apply the forum state's law of issue preclusion when it determines the preclusive effect of a state court judgment. 28 U.S.C. § 1738; *Stephan v. Rocky Mountain Chocolate Factory*, 136 F.3d 1134, 1136 (7th Cir.1998). Additionally, the forum state's law of issue preclusion applies in determining the dischargeability of debt. *Bukowski v. Patel*, 266 B.R. 838, 842 (E.D.Wis.2001) (citing *In re Bulic*, 997 F.2d 299, 304 n. 6 (7th Cir. 1993)). Accordingly, whether issue preclusion applies must be determined according to Wisconsin law.

Under Wisconsin law issue preclusion is a doctrine designed to limit relitigation of issues that were contested in a previous action between the same or different parties. *Michelle T. by Sumpter v. Crozier*, 173 Wis.2d 681, 687, 495 N.W.2d 327, 329 (1993) (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955)). Accordingly, when an issue is actually litigated and determined by a valid final judgment and the determination is essential to the judgment, it is conclusive in a subsequent action whether on the same or a different claim. *Landess v. Schmidt*, 115 Wis.2d 186, 197, 340 N.W.2d 213, 219 (Ct.App. 1983) (citing Restatement (Second) of Judgments § 27 (1982)). However, where appropriate a fundamental fairness analysis should be conducted when determining whether it is equitable to apply issue preclusion in a given case. *Michelle T. by Sumpter*, 173 Wis.2d at 698, 495 N.W.2d at 335.

In Wisconsin courts, issue preclusion is a two-step analysis. The first step is to determine whether a litigant against whom issue preclusion is asserted is in privity with a party or has sufficient identity of interests to comport with due process. *Paige K.B. ex rel. Peterson v. Steven G.B.*, 226 Wis.2d 210, 224, 594 N.W.2d 370 (1999). Mr. Larsen was a party to all previous actions, so privity is not a question the Court needs to address.

The next step in issue preclusion analysis is whether applying issue preclusion comports with principles of fundamental fairness. This is generally a discretionary decision, although some of the factors the court is to consider in determining fairness present a question of law. *Paige K.B.*, 226 Wis.2d at 225, 594 N.W.2d at 377. The factors that courts may consider when undertaking the second step of issue preclusion are: (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action? *Michelle T. v. Crozier*, 173 Wis.2d at 689, 495 N.W.2d at 330–31 (footnote omitted).

The state court judgment is valid and final and Mr. Larsen had an opportunity to review that judgment. His lack of appellate counsel to assist him does not negate the opportunity afforded to him to appeal the civil judgment. He has managed to appeal other matters, and he has represented himself in this bankruptcy. He is intelligent and articulate. Thus, the

application of issue preclusion to this adversary proceeding is not unfair.

### Nondischargeability of Teri Jendusa–Nicolai's Damages

■ Section 523(a)(6) of Bankruptcy Code reads in pertinent part "A discharge ... does not discharge an individual debtor from any debt ... for willful and malicious injury by the debtor to another entity or the property of another entity." To prevail under section 523(a)(6), a creditor must prove by a preponderance of the evidence that the debtor's conduct was both willful and malicious. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). In *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), the Supreme Court stated that "willful" for purposes of section 523(a)(6) means actual intent to cause injury, not merely the commission of an intentional act that leads to injury.

■ The state civil court's findings with respect to the intentional nature of the debtor's conduct giving rise to Teri's damage award, as a matter of law, meets the test for a finding of willfulness under section 523(a)(6). Likewise, the state court, on several occasions, referred to the "malice" exhibited by the debtor during the commission of the offense. Therefore, the state court's findings also meet the test for a finding of malicious conduct under section 523(a)(6).

■ If that weren't enough, under Wisconsin law punitive damages are only available when a defendant "acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff." Wis. Stat. § 895.043(3). Punitive damages are not awarded in Wisconsin unless a defendant acted maliciously, outrageously or in a manner that demonstrated a wanton disregard of personal rights. *Fahrenberg v. Tengel*, 96 Wis.2d 211, 222,

291 N.W.2d 516, 521 (1980) (citing *Entzminger v. Ford Motor Co.*, 47 Wis.2d 751, 757–58, 177 N.W.2d 899, 903 (1970)). Furthermore, the formulation used by Wisconsin courts in connection with punitive damages is essentially the same inquiry made in determining whether a debt is nondischargeable under section 523(a)(6). *Bukowski*, 266 B.R. at 845. The state court could not have awarded punitive damages unless it necessarily determined the debtor's conduct was willful and malicious. The determination was essential to the judgment, making the application of issue preclusion to the willful and malicious injury element of section 523(a)(6) mandatory by this Court.

Accordingly, the compensatory and punitive damages awarded Teri Jendusa–Nicolai by the state court are excepted from the debtor's discharge under 11 U.S.C. § 523(a)(6).

### Nondischargeability of Damages Awarded Other Plaintiffs

■ We now turn to the claims of David M. Nicolai, A.M.L. and H.A.L. Regarding those claims, the state court judge made the following findings and conclusions:

Now we have derivative claims in this action. Other than Miss Jendusa–Nicolai. Loss of society and companionship, loss of consortium. Those are normally considered in the trade as throw away claims. They're oftentimes made, and juries oftentimes zero them out. Almost always zero them out. The response being when you get married, it's for better or for worse, in sickness and in health, til death do you part. It's part of what life throws at you, and you've got to live with the cards that are dealt to you.

I said that's normally the response of juries in dealing with derivative claims.

And I could probably verify that by going back in the drawer where I keep a record of all the judgments rendered by juries, and almost invariably they are zeroed out. This case is different from the run of the mill PI case. . . .

And on top of all that, on behalf of Nick, we have a newlywed who had just learned he's a father or to become a father and then have to deal with the horrendous situation that his wife is in. I don't know how you do that. . . . I believe he is entitled to, in his own right, to be compensated for the loss of Teri. Not only the first two months when he had to let her sleep on the first floor, deal with her concern for the kids, getting up two, three, four times a night to check on them, but also subsequent, and it's permanent. If they enjoy water activities, Teri is not going to be able to do those things. Which deprives him of the ability to do things together with her. That's a very real loss. And something that ought to be compensated.

Under these circumstances, I think a fair amount taking into consideration the past loss of society and what will entail in the future, $200,000 is an appropriate award. Again, I don't want to seem arbitrary. I'm trying to take a number which is in relation to the other numbers involved here, but I think normally this is a throw away, but here I think 200,000 is fair and appropriate because of the special circumstances, new marriage, about to become a father, loses the child, loses the companionship of his wife not only in the past, but it's an altered relationship and will be in the future.

With regard to the kids, . . . these kids sustained a derivative. They sustained a loss. They have a derivative claim for what happened to their mother. . . . I believe, in fairness, there ought to be some compensation, but it ought not to be extremely large simply because this is something that will be in the far recesses of their minds as they grow older, unless it is continued in the forefront by those around them.

I'm going to award $50,000 to both [A.M.L.] and [H.A.L.] as derivative compensatory damages for loss of society and companionship with their mother. Now again, that may seem like a paltry number compared to everything else the Court has done, but realistically, no amount of money can make whole either Teri or Nick or [A.M.L.] or [H.A.L.]. No amount of money can.

(Transcript of Oral Decision rendered on June 19, 2008, by Judge Stephen A. Simanek in Racine County Case No.2004CV000809, pp. 30–35).

As previously noted, the Supreme Court addressed the term "willful" for purposes of section 523(a)(6) and concluded that the word "willful" modifies the word "injury." *Kawaauhau v. Geiger,* 523 U.S. at 61, 118 S.Ct. 974. "[T]he (a)(6) formulation triggers . . . the category of intentional torts, as distinguished from negligent or reckless torts." *Id.* at 61–62, 118 S.Ct. 974. Thus, the willful element of (a)(6) is satisfied if the injury is the result of an intentional tort. Wrongful intent is necessary to except a debt from discharge.

Several courts have concluded that the scope of "willful . . . injury" under § 523(a)(6) is not limited to circumstances in which the debtor desires to bring about the consequences of his conduct. If the debtor knows that the consequences are certain, or substantially certain, to result from his conduct, the debtor is treated as if he had, in fact, desired to produce those consequences. *See In re Su,* 290 F.3d 1140, 1142 (9th Cir.2002); *In re Kennedy,* 249 F.3d 576, 580 (6th Cir.2001).

In explaining *Geiger* and discussing the difficulty of proving a defendant's subjec-

tive motive, the Fifth Circuit has found the test for willful and malicious injury under section 523(a)(6) is condensed into a single inquiry of whether there exists either an objective substantial certainty of harm or a subjective motive to cause harm on the part of the debtor. *In re Williams*, 337 F.3d 504, 509 (5th Cir.2003) (citing *In re Miller*, 156 F.3d 598, 606 (5th Cir.1998)). Because debtors generally deny that they had a subjective motive to cause harm, several cases that hold debts to be nondischargeable have done so by determining whether the debtor's actions were at least substantially certain to result in injury. *See id.* at 509–10; *In re Bundick*, 303 B.R. 90, 110 (Bankr.E.D.Va.2003).

As noted by the state court judge, this is not your run-of-the-mill personal injury case. It is quite unlike *Geiger*, in which the debtor/doctor negligently prescribed oral penicillin instead of IV penicillin because it was less expensive. Dr. Geiger did not intend to cause injury to anyone, even though he intentionally prescribed less effective medication. Mr. Larsen did indeed intend to cause injury by his act, and the injury went even farther than Teri, as it was certain to do. This case is also distinguishable from *In re Stage*, 321 B.R. 486 (8th Cir. BAP 2005). In *Stage* the debtor was liable for a state court award for alienation of affections, an intentional tort still recognized at the time in Missouri. However, malice was not an element of the tort, and no malice had been determined by the state court. Therefore, collateral estoppel did not apply, and the case could not be decided on summary judgment.

The derivative claims of David Nicolai, A.M.L. and H.A.L. directly resulted from Mr. Larsen's truly heinous, willful and malicious injury to Ms. Jendusa–Nicolai. While the malicious act was not directed specifically at his former wife's husband and his own children, loss of society and companionship of a wife and mother was substantially certain to follow when he tried to kill her and succeeding in maiming her. In reaching this conclusion, this Court respectfully disagrees with the holding in *In re Jones*, 144 B.R. 242 (Bankr. N.D.N.Y.1992). In that case, the parents of a minor daughter who was raped by the chapter 7 debtor were not entitled to have their derivative claim for compensatory and punitive damages excepted from the debtor's discharge under section 523(a)(6). The court reasoned that since the parents' claim did not result from the debtor's deliberate and intentional act specifically directed at them, the claim did not come within the nondischargeability provision for willful and malicious injuries. I believe *Jones* misreads the scope of what constitutes willful and malicious intent under bankruptcy law. Injury to the derivative plaintiffs was foreseeable and certain to occur as a direct result of the debtor's malicious act. That is enough to except the damages from discharge under 11 U.S.C. § 523(a)(6).

### Conclusion

For the reasons set forth above, the judgment amounts owed to Teri Jendusa–Nicolai, David Nicolai, A.M.L. and H.A.L. are nondischargeable under 11 U.S.C. § 523(a)(6). Additionally, the debtor's child support obligation, as determined by the state court, is nondischargeable under 11 U.S.C. § 523(a)(5). The plaintiffs are entitled to summary judgment and a separate order for judgment will be entered.